IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JFJ Toys, Inc, d/b/a D & L Company and Fred Ramirez, ) ) ) | Civil Action No: |
| Plaintiffs, ) ) | COMPLAINT |
| ) | |
| vs. ) ) | |
| Sears Holdings Corporation, Sears, Roebuck and Co., and Kmart Corporation, ) ) ) ) | |
| Defendants. ) | |

## **COMPLAINT**

JFJ Toys, Inc. d/b/a D & L Company ("D&L" or "Plaintiff D&L") and Fred Ramirez ("Mr. Ramirez" or "Plaintiff Ramirez") (collectively, the "Plaintiffs") allege as follows:

### NATURE OF THE ACTION

1. D&L is the manufacturer and distributor of an award-winning children's toy product that is sold under the federally registered marks STOMP and STOMP ROCKET (the "Trademarks"). The product—an air missile toy—was first sold under the Trademarks in the early 1990s by Mr. Ramirez, sole owner of D&L. Mr. Ramirez adopted the mark STOMP ROCKET as a suggestive reference to one of several methods by which users may launch an air projectile that is powered by a cylinder- or bladder-type air pump. Plaintiffs' STOMP ROCKET brand air missile toys not only teach children about the science of motion and flight, but they also generate positive competitive games and recreational activities. STOMP ROCKET is an award-winning product.

1

2.    Defendants have distributed, offered, advertised and sold another air missile toy called the STOMP ROCKET that is produced under the Banzai toy line (hereinafter "Banzai's STOMP ROCKET" or "the Banzai STOMP ROCKET"). Banzai's STOMP ROCKET is nearly identical to Plaintiffs' STOMP ROCKET brand air missile toys. Banzai's STOMP ROCKET is sold to the same target customers as Plaintiffs' STOMP ROCKET brand air missile toys. Even after repeated demands by Plaintiffs' counsel to cease their infringing activities, Defendants continued to offer, advertise, sell and distribute, and may still offer, advertise, sell and distribute, the Banzai STOMP ROCKET both online and in stores.

3.    Defendants' use of the Trademarks in connection with the offering, advertising, sale and distribution of the Banzai STOMP ROCKET is likely to confuse, mislead or deceive consumers as to the origin or source of Plaintiffs' goods. Plaintiffs have been irreparably harmed by Defendants' use of the Trademarks and will continue to be damaged by Defendants' use of the Trademarks in connection with goods that are similar to those offered by Plaintiffs under the Trademarks.

4.    The infringement of Plaintiffs' rights by Defendants is particularly egregious because Defendants sell Plaintiffs' STOMP ROCKET products. Thus, Defendants knew or should have known that the Banzai STOMP ROCKET toys infringe Plaintiffs' legitimate trademark rights.

5.    As set forth below, Defendants' actions constitute trademark counterfeiting, trademark infringement, unfair competition and false designation of origin in violation of the federal Lanham Act, as well as trademark infringement, unfair competition, and unfair trade practices under the common law of the State of Maryland.

6.  By this action, Plaintiffs seek fair redress for Defendants' infringement and use of its Trademarks, including damages and injunctive relief, as allowable under federal and Maryland laws.

## THE PARTIES

7.  Plaintiff JFJ Toys is a Delaware Corporation with a business address in Porterville, CA. D&L Company is a fictitious business name of JFJ Toys, as registered with Tulare County, CA.

8.  Plaintiff Fred Ramirez is a citizen and resident of Camp Nelson, California.

9.  On information and belief, Defendant Sears Holding Corporation is a Delaware corporation with approximately 4000 retail outlets in the United States and Canada, some of which are operated by its subsidiaries Defendants Sears, Roebuck and Co. ("Sears" or "Defendant Sears") and Kmart Corporation ("Kmart" or "Defendant Kmart"). On information and belief, Defendant Sears is a New York corporation, and Defendant Kmart is a Michigan corporation. On information and belief, in the state of Maryland, Defendant Sears operates approximately 32 retail stores, and Defendant Kmart operates approximately 19 retail Kmart stores. On information and belief, Defendant Sears owns and operates the website www.sears.com, and Defendant Kmart owns and operates the website www.kmart.com. Defendants advertised, promoted and sold Banzai's STOMP ROCKET through both websites.

## JURISDICTION AND VENUE

10.  This is a civil action seeking monetary, declaratory and injunctive relief for trademark counterfeiting, trademark infringement, unfair competition and unfair trade practices under the Lanham Act, 15 U.S.C. §1051, *et. seq,* and the laws of the State of Maryland.

3

11.   This Court has personal jurisdiction over Defendants because, on information and belief, Defendants have solicited, transacted and conducted substantial business in Maryland, have caused the infringing Banzai STOMP ROCKET toys to be advertised, promoted, and sold within this State, have engaged in acts or omissions within this State causing the alleged injury, have engaged in acts or omissions outside of this State causing the alleged injury within this State, have entered into contracts with residents of this State, have substantial real property in this State, and have otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction.

12.   This Court has subject matter jurisdiction to hear Plaintiffs' trademark infringement and unfair competition claims under 15 U.S.C. §1125(a), (c); and 28 U.S.C. §§1331 and 1338.

13.   This court has supplemental jurisdiction over the related state law claims asserted herein pursuant to 28 U.S.C. §1367.

14.   Venue in this District is proper pursuant to 28 U.S.C. §1391(b).

FACTS

Plaintiffs' STOMP ROCKET - History

15.   In 1992, Mr. Ramirez began marketing a children's toy he called STOMP ROCKET. Over the years, D&L produced several versions of its STOMP ROCKET brand air missile toys, including the STOMP ROCKET, SUPER STOMP ROCKET, JUNIOR STOMP ROCKET, ULTRA STOMP ROCKET, STOMP ROCKET SUPER HIGH PERFORMANCE, STOMP ROCKET ULTRA, STOMP ROCKET ULTRA LED, STOMP ROCKET JR. GLOW, and DUELING STOMP ROCKET (each, a "Sub-brand Mark"). The kits vary in the number of

4

rockets included, the type of materials used in manufacturing, the projectile flight path (100'-400') and the targeted age group (3 and up to 8 and up).

16.   STOMP ROCKETS quickly became a hit not only with children, but also with parents and teachers, because they are fun and enable kids to learn about energy, motion and flight. STOMP ROCKETS gained a reputation for being superior to other commercially-available air missile toys, in large part because D&L has engineered the clearance between its launcher tubes and its projectile tubes specifically to ensure easy liftoff and optimal flight performance.

17.   Over the years, STOMP ROCKET brand air missile toys have sold more than 3.5 million units and have been honored with many prestigious awards, including those from iParenting Media (Hot Toy and Excellent Product Awards) and Creative Child Magazine (Top Toy of the Year, Seal of Excellence and Preferred Choice Awards).  According to its official website, STOMP ROCKET brand air missiles have also been credited by customers for their ability to keep children of all ages entertained for hours, for engaging special needs children and teaching them socialization skills, and for their simple and high quality craftsmanship.

Plaintiffs' STOMP and STOMP ROCKET Trademarks Infringed by Defendants

18.   On April 4, 2000, STOMP was registered by Plaintiff Ramirez with the United States Patent and Trademark Office ("PTO"), under Registration No. 2,338,580, for use in connection with "flying winged tubes and structural parts therefor" (the "STOMP Registration"). The STOMP Registration was renewed on August 23, 2010.  See Exhibit 1.

19.   On February 2, 1999, STOMP ROCKET was registered by Plaintiff Ramirez with the PTO, under U.S. Registration No. 2,221,554, for use in connection with "toys, namely, flying

winged tubes and structural parts therefor" (the "STOMP ROCKET Registration"). The Registration was renewed on June 26, 2008. See Exhibit 2.

20. Under Section 7(b) of the Federal Lanham Act, 15 U.S.C. §1057(b), the STOMP and STOMP ROCKET Registrations (collectively "the Registrations") constitute prima facie evidence of the validity of the Trademarks, of Mr. Ramirez's ownership of same, and of Mr. Ramirez's exclusive right to use the Trademarks in commerce on or in connection with the goods specified in the Certificates of Registration. In addition, on June 27, 2006 and October 30, 2009, respectively, the Registrations became incontestable under 15 U.S.C. §1065. Subject to certain statutory limitations, the Registrations now constitute conclusive evidence of the validity of the STOMP and STOMP ROCKET marks, of Mr. Ramirez's ownership of same, and of Mr. Ramirez's exclusive right to use the Trademarks in commerce on or in connection with the goods specified in the Certificates of Registration.

21. By virtue of D&L's substantially exclusive, continuous, and long standing use of the Trademarks pursuant to an exclusive license from Mr. Ramirez, the Trademarks have become strong identifiers of the source of Plaintiffs' products, symbolic of the extensive goodwill that has become associated therewith.

22. Since at least as early as December 1, 1998, D&L has also used the distinctive Sub-brand Marks SUPER STOMP ROCKET, JUNIOR STOMP ROCKET, ULTRA STOMP ROCKET, SUPER HIGH PERFORMANCE STOMP ROCKET, STOMP ROCKET ULTRA, STOMP ROCKET ULTRA LED, STOMP ROCKET JR. GLOW, and DUELING STOMP ROCKET in U.S. commerce, on and in connection with different versions of the STOMP ROCKET brand air missile toy. By virtue of D&L's substantially exclusive, continuous, and

6

long standing use of the Sub-brand Marks pursuant to an exclusive license from Mr. Ramirez,

the Sub-brand Marks have become strong identifiers of the source of Plaintiffs' products,

symbolic of the extensive goodwill that has become associated therewith.

<u>Defendants' Infringement of the Trademarks</u>

23.    On or about April 29, 2014, Seth Ramirez, General Manager of D&L, became aware

that Defendant Kmart was selling Banzai's STOMP ROCKET toy on Defendant's website,

www.kmart.com.

24.    Plaintiffs have never authorized or consented in any way to Defendants' use of the

Trademarks in connection with Banzai's STOMP ROCKET toy or any other third-party product.

25.    Banzai's STOMP ROCKET mark is so similar in appearance, sound, connotation, and

overall commercial impression to the Trademarks and common law Sub-brand Marks as to be

virtually indistinguishable from them.

26.    The Banzai STOMP ROCKET product packaging is substantially similar to the product

packaging for Plaintiffs' STOMP ROCKET brand air missile toys.  The dominant visual element

of both parties' product packaging is an image of the air missile toy in mid-flight with "air"

streaming behind the rocket.  In both cases the air missile toys are displayed in an outdoor setting

with green grass in the background.  Two children appear on the packaging; one child is

launching the missile while the other watches the missile in mid-flight.  Both parties also display

their respective marks in the upper left corner of the product packaging.  The typeface used for

the respective marks is substantially similar, and both marks are in bright yellow against a dark

background.  The word "Stomp" appears multiple times elsewhere on the packaging as well.

Compare Plaintiffs' STOMP ROCKET (on right) with Banzai's STOMP ROCKET (on left):

7



27.    On information and belief, Banzai's STOMP ROCKET toy is identical and/or closely related to Plaintiffs' STOMP ROCKET brand air missile toys.  Banzai's STOMP ROCKET toy contains, *inter alia,* three foam projectiles and one launch pad.  The recommended age is 5 years and up.  A description of the product on Defendant's website, www.kmart.com, boasted: "Take your outdoor fun to extreme sky-scraping heights with the Banzai Stomp Rocket.  Just load the rocket, launch it, and watch it blast off" and "Stomp on the foot pad to send the rocket flying." See Exhibit 3.  Plaintiffs' STOMP ROCKET brand air missile toys consist of one launch pad and four or six missiles that are projectable from 100 to 400 feet, depending on the sub-brand.  The recommended age ranges from 3 years and up to 16 years and up, depending on the sub-brand.

28.    Banzai's STOMP ROCKET toy is inferior in quality and workmanship to Plaintiffs' STOMP ROCKET toys.

8

29.  On information and belief, the Banzai STOMP ROCKET has been sold on Defendants' websites and in Defendants' retail stores in direct competition with Plaintiffs' STOMP ROCKET brand air missile toys.

30.  Between May and October, 2014, counsel for Plaintiffs made many attempts to resolve the matter informally with counsel for Defendants and with a representative of the vendor to whom Defendants' counsel directed counsel for Plaintiffs.  However, such efforts were unsuccessful.

31.  On or about June 17, 2014 and again on or about June 26, 2014, Plaintiffs' counsel purchased the Banzai STOMP ROCKET product from www.kmart.com.  In each case the email purchase confirmation referred to the item purchased as a 'Stomp Rocket.''  See Declaration of Susan J. Lutzker ¶3.

32.  On information and belief, Defendants' use of the Trademarks on their websites and email receipts in connection with the advertising, offering, and sale of the Banzai STOMP ROCKET toys is in direct competition with Plaintiffs' STOMP ROCKET brand air missile toys.

33.  On information and belief, Defendants, sophisticated sellers of toys, are very familiar with Plaintiffs' STOMP ROCKET brand air missile toys and their popularity because, *inter alia,* Defendant Sears sells Plaintiffs' products.  As recently as October 21, 2014, Defendant Sears was selling Plaintiffs' STOMP ROCKET ULTRA, STOMP ROCKET JUNIOR GLOW, STOMP ROCKET SUPER HIGH PERFORMANCE, DUELING STOMP ROCKET, and STOMP ROCKET ULTRA LED on its website, www.sears.com, for $14.46 - $47.37.  See Exhibit 4.

9

34.    The violation of Plaintiffs' trademark rights is further aggravated because the words STOMP ROCKET on the packaging of the Banzai STOMP ROCKET,  in four separate locations, are accompanied by the ™ symbol, suggesting that there is a deliberate attempt to pass off the manufacturer as the owner of the Trademarks.  See example in Exhibit 5.

35.    Defendants' infringements constitute a willful and malicious violation of Plaintiffs' trademark rights.

**COUNT I**
**TRADEMARK COUNTERFEITING UNDER THE LANHAM ACT**

36.    Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1-35, inclusive.

37. As described above, Plaintiff Ramirez owns all rights, title and interest in and to the registered Trademarks.

38. D&L's use of the Trademarks in commerce, pursuant to an exclusive license from Mr. Ramirez, has been substantially exclusive, continuous, and long standing.  The Trademarks are distinctive and representative of the extensive goodwill built up by Plaintiffs.

39. Defendants, without authorization from Plaintiffs, have used spurious designations that are identical to, or substantially indistinguishable from, the Trademarks in connection with goods covered by the registrations for the Trademarks.

40. On information and belief, Defendants have used these spurious designations (hereinafter the "Counterfeit Marks") with knowledge that they were counterfeit and with an intent to unfairly benefit from the goodwill inherent in the Trademarks.

10

41. Defendants' unauthorized use of the Counterfeit Marks in connection with the advertisement, promotion, sale, offering for sale and distribution of goods constitutes use in commerce.

42. On information and belief, Defendants' unauthorized use of the Counterfeit Marks in interstate commerce has caused, and will continue to cause, confusion, mistake, and/or deception, among Plaintiffs' and Defendants' trade and retail customers, as to the source, sponsorship, or origin of the Banzai STOMP ROCKET, and/or as to the source, sponsorship or origin of Plaintiffs' products.

43. Defendants' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44. Defendants' acts are both willful and malicious.

45. As a direct result of said trademark counterfeiting, Plaintiffs have sustained and are likely to continue to sustain substantial monetary damages and irreparable injury to their businesses, reputations and goodwill.

46. Plaintiffs have no adequate remedy at law.

47. In light of the foregoing, Plaintiffs are entitled to permanent injunctive relief prohibiting Defendants from using the Counterfeit Marks.

48. Moreover, by reason of the foregoing, Defendants are liable to Plaintiffs under Section 35(b)-(c) of the Lanham Act, 15 U.S.C. § 1117(b)-(c), for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited, or, at the election of Plaintiffs, an amount representing three (3) times Plaintiffs' damages or Defendants' illicit profits; and (b) reasonable attorneys' fees, costs, investigative fees, and pre-judgment interest.

49. Further, Plaintiffs are entitled under Section 36 of the Lanham Act, 15 U.S.C. §1118, to a court order providing that all product packaging, advertising, and promotional matter bearing the Counterfeit Marks, along with all means of making such packaging, advertising, and promotional matter, be delivered up and destroyed.

## COUNT II
## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

50. Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1-49, inclusive.

51. As described above, Plaintiff Ramirez owns all rights, title and interest in and to the registered Trademarks.

52. D&L's use of the Trademarks in commerce, pursuant to an exclusive license from Mr. Ramirez, has been substantially exclusive, continuous, and long standing. The Trademarks are distinctive and representative of the extensive goodwill built up by Plaintiffs.

53. Defendants, without authorization from Plaintiffs, have used the Trademarks in commerce in connection with the sale, offering for sale, distribution, and advertising of the Banzai STOMP ROCKET.

54. On information and belief, Defendants' unauthorized use of the Trademarks was made with knowledge that the Trademarks were the exclusive property of Plaintiffs.

55. On information and belief, Defendants' unauthorized use of the Trademarks in interstate commerce is deliberate and has caused, and will continue to cause, confusion, mistake, and/or deception, among Plaintiffs' and Defendants' trade and retail customers, as to the source, sponsorship, or origin of the Banzai STOMP ROCKET, and/or as to the source, sponsorship or origin of Plaintiffs' products.

56. Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

57. As a direct result of said trademark infringement, Plaintiffs have sustained and are likely to continue to sustain substantial monetary damages and irreparable injury to its business, reputation and goodwill.

58. Plaintiffs have no adequate remedy at law.

59. In light of the foregoing, Plaintiffs are entitled to permanent injunctive relief prohibiting Defendants from using the Trademarks or any marks identical and/or confusingly similar thereto.

60. Moreover, by reason of the foregoing, Plaintiffs are entitled under Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), to recover Defendants' profits, Plaintiffs' damages, and the costs of the action.  Plaintiffs are also entitled under Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), to treble damages and increased profits by reason of the circumstances of the case, and to attorneys' fees by reason of the willfulness of Defendants' conduct, which willfulness renders this an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a).

61. Further, Plaintiffs are entitled under Section 36 of the Lanham Act, 15 U.S.C. §1118, to a court order providing that all product packaging, advertising, and promotional matter bearing the Trademarks, along with all means of making such packaging, advertising, and promotional matter, be delivered up and destroyed.

## COUNT III
## FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

62.  Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1-61,. inclusive.

63. Defendants, without authorization from Plaintiffs, have used the Trademarks and common law Sub-brand Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of the Banzai STOMP ROCKET.

64. By using Plaintiffs' registered Trademarks and common law Sub-brand Marks in connection with the sale, offering for sale, distribution, and advertising of Banzai's STOMP ROCKET goods, Defendants have falsely designated the origin of such goods within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), thereby causing confusion, mistake or deception among consumers as to the source or origin of the Banzai STOMP ROCKET and/or as to the source or origin of Plaintiffs' products.

65. On information and belief, Defendants' unauthorized use of the Trademarks and the common law Sub-brand Marks was made with knowledge that those marks were the exclusive property of Plaintiffs.

66. On information and belief, Defendants' deliberate use of false designations of origin in interstate commerce has caused confusion, mistake, and/or deception among Plaintiffs' and Defendants' actual and prospective customers.

67. As a direct result of said false designations of origin, Plaintiffs have sustained and are likely to continue to sustain substantial monetary damages and irreparable injury to its business, reputation and goodwill.

68. Plaintiffs have no adequate remedy at law.

69. In light of the foregoing, Plaintiffs are entitled to permanent injunctive relief prohibiting Defendants from using the Trademarks and common law Sub-brand Marks, or any marks identical and/or confusingly similar thereto.

70. Moreover, by reason of the foregoing, Plaintiffs are entitled under Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), to recover Defendants' profits, Plaintiffs' damages, and the costs of the action.  Plaintiffs are also entitled under Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), to treble damages and increased profits by reason of the circumstances of the case, and to attorneys' fees by reason of the willfulness of Defendants' conduct, which willfulness renders this an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a).

71. Further, Plaintiffs are entitled under Section 36 of the Lanham Act, 15 U.S.C. §1118, to a court order providing that all product packaging, advertising, and promotional matter bearing the Trademarks or the common law Sub-brand Marks, along with all means of making such packaging, advertising, and promotional matter, be delivered up and destroyed.

## Count IV
## TRADEMARK INFRINGEMENT UNDER COMMON LAW

72.  Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1-71, inclusive.

73.  As described above, Plaintiffs own all rights, title and interest in and to the Trademarks, including the common law Sub-brand Marks.

74.  As described above, the Trademarks and common law Sub-brand Marks are distinctive and Plaintiffs have built up valuable good will in the Trademarks and common law Sub-brand Marks.

75. Defendants, without authorization from Plaintiffs, have used the Trademarks and common law Sub-brand Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of the Banzai STOMP ROCKET.

76. Defendants' use of the Trademarks and common law Sub-brand Marks in connection with the Banzai STOMP ROCKET toys infringes Plaintiffs' common law rights therein and has and will continue to cause confusion, mistake, or deception among consumers as to the source, sponsorship, and origin of the Banzai STOMP ROCKET toys and/or as to the source, sponsorship, and origin of Plaintiffs' air missile toys.

77. On information and belief, Defendants' unauthorized use of the Trademarks and the common law Sub-brand Marks was made with knowledge that those marks were the exclusive property of Plaintiffs.

78. Defendants' deliberate use of a colorable imitation or confusingly similar variation on the Trademarks and common law Sub-brand Marks infringes Plaintiffs' rights therein and has and will continue to cause confusion, mistake, or deception among consumers as to the source, sponsorship, and origin of the Banzai STOMP ROCKET toys or as to the source, sponsorship, and origin of Plaintiffs' air missile toys.

79. Defendants' conduct deceived or is likely to deceive, and caused or is likely to cause, confusion or mistake among actual and prospective consumers of Plaintiffs' products by passing off Defendants' products as having been manufactured, sponsored or otherwise approved by or connected with Plaintiffs.

80. As a direct and proximate result of Defendants' infringements of Plaintiffs' common law trademark rights under the State of Maryland and other common law, Plaintiffs have sustained and are likely to continue to sustain monetary damages and irreparable injury to its business, reputation and goodwill.

81. Plaintiffs have no adequate remedy at law.

16

82. By reason of the foregoing acts, Defendants are liable to Plaintiffs for trademark infringement, and Plaintiffs are therefore entitled to permanent injunctive relief and monetary damages.

83. Plaintiffs are entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate and intentional conduct.

## Count V

## UNFAIR TRADE PRACTICES UNDER MD. CODE COM. LAW § 13-101 *et seq.*

84. Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1-83, inclusive.

85. As described above, Defendants have engaged in unfair or deceptive trade practices by making, in the course of selling and offering to sell the Banzai STOMP ROCKET toys, false, falsely disparaging, and misleading statements, visual descriptions, and other representations which have the capacity, tendency, or effect of deceiving or misleading consumers.

86. As described above, Defendants have engaged in unfair or deceptive trade practices by representing to consumers, in the course of selling and offering to sell the Banzai STOMP ROCKET toys, that the Banzai STOMP ROCKET toys have a source, sponsorship, and characteristic that they do not have and that said toys are of a standard, quality, grade, style, and model which they are not.

87. As described above, Defendants have engaged in unfair or deceptive trade practices by representing to consumers, in the course of selling and offering to sell the Banzai STOMP ROCKET toys that those toys have a source, sponsorship, approval, status, affiliation, and connection that they do not have.

88. Defendants' false and misleading representations and deceptive conduct are material in that the same have caused and are likely to cause Plaintiffs' and Defendants' prospective consumers to be deceived as to the source, sponsorship, characteristics, status, affiliation, connection, standard, quality, grade, style, and model of Plaintiffs' products and the Banzai STOMP ROCKET toys.

89. By reason of Defendants' unfair and deceptive trade practices as defined by Section 13-301 of Maryland's Consumer Protection Act, Defendants have violated Section 13-303 of Maryland's Consumer Protection Act.

90. As a direct and proximate result of said unfair and deceptive trade practices, Plaintiffs, as well as consumers, have sustained and are likely to continue to sustain damages.

91. Plaintiffs have no adequate remedy at law.

92. Pursuant to Sections 13-406 and 13-408 of Maryland's Consumer Protection Act, Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain compensatory damages and attorney's fees.

## Count VI
## UNFAIR COMPETITION UNDER COMMON LAW

93. Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1-92, inclusive.

94. As described above, Defendants have engaged in false and misleading representations and omissions of material fact and have engaged in deceptive conduct.

95. Defendants' false and misleading representations and deceptive conduct are material in that they falsely represent the source of the Banzai STOMP ROCKET toys, thereby harming Plaintiffs' legitimate business interests by deceiving actual and prospective consumers into

18

believing that the Banzai STOMP ROCKET toys are of the same nature and quality as Plaintiffs' products.

96. Defendants' use is in bad faith as Defendants refused Plaintiffs' request to cease use of the Trademarks, even after having been provided with notice of Plaintiffs' rights.

97. As a direct result of said deceptive conduct, Plaintiffs have sustained and are likely to continue to sustain damages.

98. Defendants' unauthorized use of the Trademarks and the Sub-brand Marks constitutes unfair competition under the common law of the State of Maryland and other common law.

99. Plaintiffs have no adequate remedy at law.

100.    Plaintiffs are therefore entitled to permanent injunctive relief and monetary damages.

101.    Plaintiffs are entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate and intentional conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.   Permanently enjoining and restraining Defendants, their officers, directors, shareholders, agents, employees, and attorneys and all those acting in concert with them from using the Trademarks, the common law Sub-brand Marks and any colorable imitation or close variation thereof.

B.   Ordering that Defendants file with this Court and serve upon Plaintiffs within 20 days after the service of such injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which Defendants have complied with such injunctions.

C.  Ordering an accounting of all revenues received by Defendants as a result of their unlawful conduct.

D.  Awarding Plaintiffs: (1) Defendants' profits realized as a result of the trademark infringements, false designations of origin, unfair competition, and/or each of the Defendant's unfair or deceptive trade practices, or in the Court's discretion, such sum as the Court finds to be just; (2) actual damages sustained by Plaintiffs, or such other amount as the Court may find just; and (3) the costs of this action.

E.  Awarding Plaintiffs increased damages and profits, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a)-(c).

F.  Awarding Plaintiffs the relief set forth in 15 U.S.C. §1118.

G.  Awarding Plaintiffs prejudgment and post-judgment interest on any monetary award in this action.

I.  Granting such other and further relief as to this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims for which there is a right to jury trial.

Dated: November 10, 2014

Respectfully Submitted,

By /s/ _____

Arnold P. Lutzker (USDC MD no. 29660)
Susan J. Lutzker (USDC MD no.  29661)
Allison L. Rapp (USDC MD no. 28930)
Jeannette M. Carmadella (USDC MD no. 29648)
LUTZKER & LUTZKER LLP

20

1233 20th St. NW, Suite 703
Washington, DC 20036
Phone: (202)408-7600
Fax: (202) 408-7677
arnie@lutzker.com
susan@lutzker.com
Allison@lutzker.com
Jeannette@lutzker.com

*Attorneys for Plaintiffs*