IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JFJ TOYS, INC., *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. PX-14-3527 |
| | * | |
| SEARS HOLDINGS CORPORATION, *et al.*, | * | |
| Defendants. | * | |

\***\*\***

**MEMORANDUM OPINION**

Pending is a Motion to Exclude the expert report and testimony of Peter Magalhaes (ECF No. 82) and a Motion for Partial Summary Judgment (ECF No. 71) filed by Plaintiffs/Counter Defendants JFJ Toys, Inc. and Fred Ramirez (collectively, "Plaintiffs"). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Plaintiffs' Motion to Exclude is granted and Plaintiffs' Motion for Partial Summary Judgment is granted in part and denied in part.

## I.    BACKGROUND[1]

Plaintiff JFJ Toys, Inc. d/b/a D&L Company ("JFJ") is the manufacturer and distributor of a children's toy product—an air missile toy known and trademarked as STOMP and STOMP ROCKET. ECF No. 1 at 1; Declaration of Fred Ramirez, ECF No. 71-6 at 2. The air missile toy

---

[1] Unless otherwise noted, the facts here are construed in the light most favorable to the Defendants, the nonmoving party.

was manufactured and sold by JFJ until on or about January 1, 2015, when D&L Company LLC ("D&L") was formed. ECF No. 71-6 at 2. Plaintiff Fred Ramirez ("Plaintiff Ramirez") is the sole owner of D&L. ECF No. 71-6 at 2. D&L is now responsible for the manufacture and sale of Plaintiffs' STOMP ROCKET brand products under a license from Plaintiff Ramirez. ECF No. 71-6 at 2.

In 1992, Plaintiff Ramirez began marketing the "Stomp Rocket." ECF No. 71-6 at 1. On February 2, 1999, "STOMP ROCKET" was registered by Plaintiff Ramirez with the United States Patent and Trademark Office ("USPTO"), under U.S. Registration No. 2,221,554, for use in connection with "toys, namely, flying winged tubes and structural parts therefor" (the "Stomp Rocket Registration"). *See* ECF No. 71-11. The Stomp Rocket Registration was renewed on June 26, 2008, and it became incontestable under 15 U.S.C. §1065 on October 30, 2009. ECF No. 71-15. On April 4, 2000, "STOMP" was registered by Plaintiff Ramirez with the USPTO, under Registration No. 2,338,580, for use in connection with "toys, namely, flying winged tubes and structural parts therefor" (the "Stomp Registration"). ECF No. 71-16. The Stomp Registration became incontestable under 15 U.S.C. §1065 on June 27, 2006, and was last renewed on August 23, 2010. ECF No. 71-16 at 3.

Since 1992, JFJ and D&L have produced several versions of the Stomp Rocket brand air missile toys, including the Stomp Rocket, Super Stomp Rocket, Junior Stomp Rocket, Ultra Stomp Rocket, Stomp Rocket Super High Performance, Stomp Rocket Ultra, Stomp Rocket Ultra LED, Stomp Rocket Jr. Glow, and Dueling Stomp Rocket. ECF No. 71-6 at 2; ECF No. 71-37. All versions of the Stomp Rocket brand toy use an air bladder and flex tubing to launch lightweight, winged missiles into the air. ECF No. 71-6 at 2. However, Plaintiffs' Stomp Rocket kits vary in the number of missiles included, the type of materials used in manufacturing, the

projectile flight path (100'- 400') and the targeted age group (three and up to eight and up). *Id*. Since 1992, Stomp Rocket brand air missile toys have sold more than 5 million units and have won awards from iParenting Media (Hot Toy and Excellent Product Awards) and Creative Child Magazine (Top Toy of the Year, Seal of Excellence and Preferred Choice Awards). *See* ECF No. 71-6 at 2; ECF No. 95-1.

Defendant Sears Holding Corporation is the holding company of Defendants Sears and Roebuck, Co. and Kmart Corporation (collectively, "Sears"), which operate approximately 1,700 retail stores in the United States, selling tens of thousands of products including children's toys. ECF No. 78-19 at 2 (Sears Holding Corporation's public business profile). In 2013, Defendants entered into an agreement with Toy Quest Ltd. (the "Purchase Order") to purchase 10,596 units of a BANZAI-brand air missile toy called the Stomp Rocket (the "Banzai Stomp Rocket"). *See* ECF No. 72-1.[2]

Defendants began selling the Banzai Stomp Rocket on January 14, 2014, online on Sears.com and Kmart.com and in Kmart retail stores. *See* ECF No. 71-38 at 4; ECF No. 71-39; ECF No. 72-19 at 8. When Defendants began selling the Banzai Stomp Rocket, Defendant Sears was simultaneously selling Plaintiffs' Stomp Rocket Ultra, Stomp Rocket Junior Glow, Stomp Rocket High Performance, Dueling Stomp Rocket, and Stomp Rocket Ultra LED on its website, www.sears.com. ECF Nos. 71-40, 71-41, 71-42, 71-43.The Banzai Stomp Rocket sold by Defendants uses a mark that includes the words "Stomp Rocket." ECF No. 95-7 (see below for photograph of Defendants' Banzai Stomp Rocket on left and Plaintiffs' Super Stomp Rocket on right).

---

[2] The vendor agreement is dated May 10, 2013. ECF No. 78-13. The purchase order is dated September 23, 2013. ECF No. 72-1.

 

**Defendants' Product**          **Plaintiffs' Product**

On April 29, 2014, Seth Ramirez, General Manager of JFJ and D&L, became aware that Defendant Kmart was selling the Banzai Stomp Rocket on Defendant's website www.kmart.com. Declaration of Seth Ramirez, ECF No. 71-8 at 1. Shortly thereafter, on May 4, 2014, Plaintiffs' counsel sent a cease and desist letter to Defendants. ECF No. 95-7 at 2. Plaintiffs sent a second cease and desist letter on May 19, 2014. ECF No. 95-7 at 5. On June 17, 2014 and again on June 26, 2014, Plaintiffs' counsel, Susan Lutzker, purchased the Banzai Stomp Rocket from www.kmart.com. *See* ECF No. 95-7 at 11–15. In each case, the email purchase confirmation used the mark "Stomp Rocket" to refer to the item purchased by Ms. Lutzker. *Id.* Following receipt of the cease and desist letter, Kmart purchased air missile toys for the following season from Toy Quest which had been repackaged as the BANZAI Power Launcher Rocket. Declaration of Keith Hobson, ECF No. 78-1 at 3; No. 78-4.

Plaintiffs filed the present action on November 11, 2014, and amended their Complaint on February 2, 2015, bringing claims of trademark counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1) (Count I), trademark infringement under Section 32 of the

Lanham Act, 15 U.S.C. § 1114(1) (Count II), false designation of origin under Section 43(a) of

the Lanham Act, 15 U.S.C. § 1125(a)(1) (Count III), trademark infringement under the

Maryland common law (Count IV), unfair trade practices under the Maryland Consumer

Protection Act, Md. Code Ann., Comm. Law § 13-101 *et seq.* (Count V), and unfair competition

under Maryland common law (Count VI). *See* ECF No. 34.

On February 20, 2015, Defendants filed their Answer to the Amended Complaint and a

Counterclaim for cancellation of the "Stomp" and "Stomp Rocket" trademark registrations on

the grounds that the marks are generic. ECF No. 41. On June 10, 2016, Plaintiffs moved for

summary judgment on Defendants' liability as to all claims. ECF No. 71. And on August 11,

2016, Plaintiffs moved to exclude the expert report and testimony of Peter Magalhaes. ECF No.

82.

## II.      DISCUSSION

### A. Plaintiffs' Motion to Exclude the Expert Report and Testimony of Peter Magalhaes

Defendants named a "toy marketing expert," Peter Magalhaes, who intends to testify as

to (1) whether the term "Stomp" or "Stomp Rocket" has acquired secondary meaning as a

registered trademark in the toy industry; (2) whether the term "Stomp" or "Stomp Rocket" is a

generic term; and (3) whether there is confusion between the Plaintiffs' Stomp Rocket and the

Banzai Stomp Rocket. Expert Report of Peter Magalhaes, ECF No. 82-3 at 2.

Plaintiffs urge the Court to exclude this expert opinion pursuant to Rule 702 of the

Federal Rules of Evidence for its lack of reliability and relevance. Plaintiffs so urge because Mr.

Magalhaes possesses little to no relevant training, education and experience to render an opinion

in this area. ECF No. 82-1 at 2. Plaintiffs further question the reliability of Mr. Magalhaes'

opinion on two grounds: insufficient methodology and Mr. Magalhaes' role as an interested party

in the litigation. ECF No. 82-1 at 2, 3. Finally and in the alternative, Plaintiffs argue that Mr.

Magalhaes' testimony is not helpful to the trier of fact because it is phrased in conclusory terms and merely opines on the ultimate legal issue, thereby usurping the fact-finding mission of the jury. ECF No. 82-1 at 5.

Rule 702 contemplates that the court will evaluate whether the testimony is reliable and will aid the ultimate trier of fact. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Courts have distilled Rule 702's requirements into two crucial inquiries: whether the proposed expert's testimony is relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must carry out the special gatekeeping obligation of ensuring that expert testimony meets both requirements. *Kumho Tire*, 526 U.S. at 147.

### 1.  The Reliability of Mr. Magalhaes' Opinions

Plaintiffs urge the Court to apply strictly the factors articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) in reviewing Mr. Magalhaes' opinions.  It bears noting, however that Rule 702 does not "create[] a schematism that segregates expertise by type

while mapping certain kinds of questions to certain kinds of experts. . . . [But rather] the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151–52 (1999). Here, Mr. Magalhaes' opinion relies solely on his toy marketing experience generally, "requir[ing] slightly different considerations than other expert witnesses." *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, No. RDB-12-2568, 2014 WL 6871581, at *5 (D. Md. Dec. 3, 2014).

The Advisory Committee Notes to Rule 702 confirm that formal scientific or academic training and methodology is not a necessary predicate to testimony as an expert. Rather, experience alone, or in conjunction with "other knowledge, skill, training or education," can provide a sufficient foundation for expert testimony. *See also Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). "Experiential testimony need not 'rely on anything like the scientific method.'" *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 345 n.9 (D. Md. 2011) (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007)).

However, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, Advisory Comm. Notes; *see also Casey*, 823 F. Supp. 2d at 345 n.9 (quoting *Wilson*, 484 F.3d at 274). The gatekeeping role of the Court ensures "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

A court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert [where there is] simply too great an analytical gap between the data and the opinion proffered." *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 454 n.4 (4th Cir. 2010); *accord Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993) ("[W]e are unprepared to agree that 'it is so if an expert says it is so.'") (citation omitted). "Expert testimony rooted in subjective belief or unsupported speculation does not suffice." *Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F. App'x 138, 138 (4th Cir. 2015) (quoting *Daubert*, 509 U.S. at 590) (internal quotation marks omitted).

When a party challenges an expert's qualifications, "the test for exclusion is a strict one, and the purported expert must have either satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989)). But expertise in one field does not qualify a witness as an expert in other fields. *See Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001).

Mr. Magalhaes intends to opine that the (1) "[t]here is no secondary meaning ascribed to the term stomp rocket;" (2) "there is no likelihood of confusion or likelihood of mistake as to the source of the air missile toy at issue in this case;" and (3) "the term [sic] 'stomp rocket' and 'stomp' are generic terms and not associated with any single particular brand." ECF No. 82-3 at 5. To reach his conclusions, Mr. Magalhaes relies predominantly on the results of undefined internet searches, a photograph of "a large display of Banzai products in a Sears store," and a single public statement of Plaintiff Ramirez. ECF No. 82-3 at 2–3.

First with regard to Mr. Magalhaes' training and qualifications, they are wholly inadequate for those areas of offered expertise in marketing and sales for the air launcher/rocket

toy market. Mr. Magalhaes has been "involved in the marketing of toys" generally "for approximately seven years," and thus has "interact[ed] with hundreds of persons responsible for purchasing toys ranging from the largest retailers to mom and pop toy stores." ECF No. 82-3 at 3. But even accepting as true this self-admitted expertise, it is overbroad and devoid of specifics pertinent to the relevant market of air-powered launchers or the use of the marks STOMP or STOMP ROCKET in that same market.

Notably, the only toy experience Mr. Maghalaes has enjoyed is as General Manager of Acquawood—the very corporation who denied involvement in the "sales" of the rocket toy in question. ECF No. 99-1 at 13–14. Accordingly, no evidence demonstrates that Magalhaes has any experience in the relevant market. Nor has Mr. Magalhaes published any articles nor previously acted as an expert witness in any matters at all, and so cannot point to any experience, training or education in the relevant field. ECF No. 82-3 at 2. Without more, Mr. Magalhaes has failed to establish his bona fides as a marketing and sales expert in this particular toy market.

In this regard, Defendants' reliance on widely varying precedent highlights Mr. Magalhaes' insufficient qualifications. Defendants' Response in Opposition, ECF No. 86 at 7 (citing *Tassin v. Sears, Roebuck & Co.*, 946 F. Supp. 1241 (M.D. La. 1996) (expert qualified as a design engineer where he held an undergraduate and masters in mechanical engineering, worked in the field for over twenty years, including extensive work on product design, and had evaluated the designs of numerous products in litigation-oriented consulting work); *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (qualified expert had forty years of experience in the banking industry); *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2008 WL 4116090 (S.D. Ohio 2008) (allowing an expert to testify based on his 20 years of experience, published material, and had been retained in over a dozen civil and criminal cases)).

*See also* ECF No. 86 at 11 (citing *Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.*, No. 92 C 5170, 1994 WL 529331, at *11–12 (N.D. Ill. Sept. 27, 1994) (expert qualified to testify about an alcohol brand's secondary meaning based on forty-five years of experience in the liquor industry, chaired two statewide liquor store associations, chaired a corporation that owned multiple liquor stores, and owned a company that franchised liquor stores); *Betterbox Communications Ltd. v. BB Technologies, Inc.*, 300 F.3d. 325 (3d Cir. 2002) (expert with 20 years in the field of direct marketing, mail-order catalogs and the use of logos and how they are used in the marketplace was permitted to testify)).

Further, with respect to Mr. Magalhaes' ultimate opinions, Mr. Magalhaes' report does not explain how he arrived at his conclusions (his methodology) or how he "reliably applied" his experience to the facts of this case. *Wilson*, 484 F.3d at 274; ECF No. 82-3 at 5. Similarly, Mr. Magalhaes' brief description of a hypothetical toy store falls short of reliably applying any alleged expertise in toy marketing in reaching his conclusion about the trademarks. His report, devoid of the hallmarks of admissible expert opinion, lacks "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *accord United States v. Raynor*, No. CRIM. 3:13MJ215, 2013 WL 5770529, at *9 (E.D. Va. Oct. 24, 2013) (quoting *Zenith Elec. Corp. v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005)) ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods."); *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) ("A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using . . . valid methods." ); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2011 WL 6748518, at *7 (E.D.N.C. Dec. 22, 2011) (citing Fed. R. Evid.

702; *Wilson*, 484 F.3d at 276; *Cooper*, 259 F.3d at 200) ("In addition to requiring that an expert's methodology be generally reliable, Rule 702 requires an expert to reliably apply his methodology to the facts."). Mr. Magalhaes, therefore, will not be permitted to offer his unfounded opinions in this case.[3]

### 2. The Relevance of Mr. Magalhaes' testimony

To be relevant, the proposed expert testimony must be helpful to the trier of fact. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). "[Q]uestions of fact that are committed to the jury are the proper subject of opinion testimony." *United States v. McIver*, 470 F.3d 550, 561 (4th Cir. 2006) (citing Fed.R.Evid. 704(a)); *see generally Anheuser–Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992) (likelihood of confusion is an "inherently factual" determination which is "particularly amenable to resolution by a jury."). By contrast, expert opinions that merely recite "a legal standard and draw[] a legal conclusion by applying law to the facts is generally inadmissible." *McIver*, 470 F.3d at 561–62 (citing *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002)). An expert's testimony is deemed a legal conclusion where "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that in the vernacular." *Id.* at 562. The district court's task "is to distinguish [helpful] opinion testimony that embraces an ultimate issue of fact from [unhelpful] opinion testimony that states a legal conclusion." *Barile*, 286 F.3d at 760.

---

[3] Plaintiffs also contend Mr. Magalhaes' opinion should be excluded because he works for Toyquest and Acquawood and exercised settlement authority *vis* the Plaintiffs prior to the filing of this suit. ECF No. 82-1 at 2; *see* ECF No. 95-7 at 28. Generally, "an expert witness's bias goes to the weight, not the admissibility of the testimony, and should be brought out on cross-examination." *Glass v. Anne Arundel Cty.*, 38 F. Supp. 3d 705, 715 (D. Md. 2014); *Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, 858 F. Supp. 2d 505, 515 (D. Md. 2012) (citing 29 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6265 (2011)) ("Alleged bias is ordinarily a question of credibility, not admissibility."). Here, Defendant has confirmed that Maghalhaes, while affiliated with ToyQuest through Acquawood, is receiving payment from Toyquest for his expert services wholly separate than his income generated as an Acquawood employee. Magalhaes is also not receiving any contingency or bonus tied to performance as an expert in this case. ECF. 100. Magalhaes' opinions, therefore, will not be excluded because of his affiliation with Acquawood or Toyquest.

Mr. Magalhaes' opinions almost exclusively opine on the ultimate legal conclusion. "It is my opinion," he announces, "that stomp rocket is a generic term that refers to a category of air missile toys" and "not associated with any product or manufacturer." Further, he opines that "there is no secondary meaning ascribed to the term stomp rocket" and "there is no confusion between the source of the particular air missile toy in this case" ECF No. 82-3 at 3–4.

These are precisely the legal conclusions reserved for the fact-finder. *See U.S. v. Melvin*, 508 F. App'x 209 (4th Cir. 2013). Defendants reliance on *Solid 21, Inc. v. Hublot of America*, 109 F. Supp. 3d 1313, 1318–19 (C.D. Cal. 2015), further undermines the admissibility of Magalhaes' opinions in this regard. In *Solid 21*, the three expert opinions regarding genericness were free of legal conclusions and buttressed by voluminous exhibits, a database developed at the behest of the USPTO, and "an extensive overview of the basis for her opinion . . . with examples of the use of the term in the industry," respectively. *Solid 21, Inc. v. Hublot of Am.*, 109 F. Supp. 3d 1313, 1318 (C.D. Cal. 2015). Mr. Magalhaes has provided no similar analysis or factual support for his final opinions on legal conclusions which invade fact finder's province.

As to Magalhaes' opinion on likelihood of confusion, Defendants' attempt to clarify that Magalhaes "will testify on the name recognition of the BANZAI house mark" and "purchasing conditions of consumers, including use of house brands for identical products and the existence of numerous manufacturers of air missile toys." ECF No. 86 at 11.  But Mr. Magalhaes' report provides no basis for even this proffered testimony. As formulated, Mr. Magalhaes' likelihood of confusion opinion amounts to little more than a legal conclusion. *See Eghnayem v. Boston Sci. Corp.*, 57 F. Supp. 3d 658, 699 (S.D.W. Va. 2014) (quoting *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009)) (excluding expert opinion where the report is a narrative review of documents and rife with legal conclusions because "[a]n expert cannot be

presented to the jury solely for the purpose of constructing a factual narrative based on the record of evidence."). And devoid of methodology, the Court cannot even allow Mr. Magalhaes to "offer a more general expert opinion, using terms that do not have a separate, distinct, and specialized meaning in the law." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 629 (S.D.W. Va. 2013), *on reconsideration in part* (June 14, 2013). Thus, Mr. Magalhaes' expert opinions must be excluded.[4]

### 3. Defendants' Request to Supplement Mr. Magalhaes' Expert Report

In their Opposition, Defendants claim that they intend to supplement Mr. Magalhaes' expert report by submitting new evidence through Mr. Magalhaes. ECF No. 86 at 7 ("Sears intends to submit, through Magalhaes, additional evidence of genericness"). They also suggest that Mr. Magalhaes will bolster his report with "specific books, websites, and advertisements." ECF No. 86 at 9.

Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert report contain "a complete statement of all opinions the witness will express," "the facts or data considered by the witness in forming them," and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). Failure to comply with Rule 26 regarding expert disclosure precludes the moving party from seeking to admit the same evidence at trial. Fed. R. Civ. P. 37(c)(1); *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014).

Rule 37(c)(1), however, provides two narrow exceptions to the general rule of exclusion: "(1) when the failure to disclose is substantially justified, and (2) when the nondisclosure is

---

[4] To the extent Defendants offer the testimony of Mr. Magalhaes as a fact witness, ECF No. 78-5 (Affidavit Declaration of Peter Magalhaes), his affidavit will be considered for the purposes of the Court's summary judgment analysis.

'harmless.'" *Wilkins*, 751 F.3d at 222 (internal citations and quotation marks omitted). To

determine whether these exceptions apply, courts may consider the following factors:

> (1) the surprise to the party against whom the evidence would be
> offered; (2) the ability of that party to cure the surprise; (3) the
> extent to which allowing the evidence would disrupt the trial; (4)
> the importance of the evidence; and (5) the non-disclosing party's
> explanation for its failure to disclose the evidence.

*Id.* (quoting *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th

Cir. 2003)) (emphasis omitted). "The burden of establishing these factors lies with the non-

disclosing party." *Id.* As these factors are meant only to guide the district court's inquiry, it need

not specifically address each one. *Id.*

Defendants have given no substantial justification as to why they should be permitted to

supplement Mr. Magalhaes' expert opinions at this juncture. Discovery is closed. Motions for

summary judgment are ripe. Defendants have offered no valid justification for failing to

supplement Magalhaes' report sooner. In light of the foregoing, any possible late disclosure is

not harmless. ECF No. 43 at 3. This is because Defendants seek to bolster its woefully thin

evidentiary record with some scintilla of evidence demonstrating the STOMP and STOMP

ROCKET marks are generic. Thus, any such request to supplement Mr. Magalhaes' expert report

will be denied. *See Wilkins*, 751 F.3d at 223 (finding that the district court did not err in

excluding discovery disclosures that were made "after discovery was closed" and "after [the non-

disclosing party] filed a motion for summary judgment").

**B. Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs JFJ Toys and Fred Ramirez have moved for partial summary judgment pursuant

to Rule 56 of the Federal Rules of Civil Procedure as to liability on all counts. ECF No. 71 at 1.

A court may enter summary judgment only if there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.

2008). However, summary judgment is inappropriate if any material fact at issue "may

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th

Cir. 2001).

The moving party bears the burden of showing there is no genuine issue as to any

material fact. *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). The

moving party can meet this burden by demonstrating the absence of evidence to support the

nonmoving party's case. *Celotex*, 477 U.S. at 323. In response, the nonmoving party must then

demonstrate specific facts showing that a genuine issue remains for trial. *Id.* at 324. "A party

opposing a properly supported motion for summary judgment may not rest upon the mere

allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there

is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th

Cir. 2003) (internal quotation marks and citation omitted) (alteration in original). In deciding a

motion for summary judgment, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson*, 477 U.S. at 249.

### 1. Trademark Infringement & Unfair Competition

Plaintiffs assert claims of trademark infringement and false designation of origin under

the Lanham Act (15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)), and trademark infringement and

unfair competition under Maryland common law.

To establish a claim of trademark infringement, a plaintiff must prove that it (1) owns a

valid and protectable mark and (2) that the defendant's use of that mark creates a likelihood of

confusion.[5] *See Putt-Putt LLC v/ 416 Constant Friendship, LLC*, 936 F. Supp. 2d 648, 653 (D.

Md. 2013) (collecting cases); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43

F.3d 922, 930 (4th Cir. 1995); *Cava Grp., Inc. v. Mezeh-Annapolis, LLC*, No. GJH-14-355, 2016

WL 3632689, at *5 (D. Md. July 7, 2016) (quoting *Petro Stopping Centers, L.P. v. James River*

*Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir. 1997)); 15 U.S.C. § 1114(1)(a) (providing that "[a]ny

person who shall, without the consent of the registrant . . . use in commerce any reproduction,

counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering

for sale, distribution, or advertising of any goods or services on or in connection with which such

use is likely to cause confusion . . . shall be liable in a civil action by the registrant . . . .").[6] The

test for a false designation of origin/unfair competition claim is essentially the same as the test

for trademark infringement. *Entrepreneur Media, Inc. v. JMD Entm't Grp.*, LLC, 958 F. Supp.

2d 588, 594 (D. Md. 2013) (citing *Lone Star*, 43 F.3d at 930); *accord Lamparello v. Falwell*, 420

F.3d 309, 313 (4th Cir. 2005).

### a.  Validity of Plaintiff's Trademark

Defendants argue that Plaintiffs' trademark registration should be cancelled because the

term "stomp rocket" has become generic. Defs.' Br. in Opp'n, ECF No. 78 at 9. Plaintiffs

---

[5] The Parties do not dispute that the Defendants used in commerce and in connection with the sale of goods. *See People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (listing additional elements of proof).

[6] Common law trademark infringement and unfair competition under Maryland law require proof of the same elements as under the Lanham Act, and, accordingly, the Court will consider these claims together. *See Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 n.3 (4th Cir. 1990); *see also A.C. Legg Packing Co. v. Olde Plantation Spice Co.*, 61 F. Supp. 2d 426, 432 (D. Md. 1999) ("[Plaintiff's] claim of trademark infringement under federal law also suffices to establish its claim of trademark infringement under the common law of Maryland."); *Putt-Putt, LLC v. 416 Constant Friendship, LLC*, 936 F. Supp. 2d 648, 659 (D. Md. 2013) (citing *Mid South Bldg. Supply of Md., Inc. v. Guardian Door & Window, Inc.*, 847 A.2d 463, 471–72 (Md. Ct. Spec. App. 2004) (stating that trademark infringement and unfair competition claims "under both the Lanham Act and Maryland law are based upon the same legal test").

respond that the incontestability of the "stomp rocket" mark renders it presumptively not generic and Defendants have failed overcome that presumption. ECF No. 83 at 7.

Trademarks fall into one of four categories: (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; (4) generic. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976); *see Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 538–39 (4th Cir. 2004); *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124–25 (4th Cir. 1990). The protection accorded trademarks is directly related to the mark's distinctiveness. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). Arbitrary, fanciful, and suggestive marks are inherently distinctive and thus merit the highest protection; whereas generic marks do not merit any trademark protection. *Id.*; *see also U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002).

Fanciful marks are usually nonsense words expressly coined to serve as a trademark, while arbitrary marks "consist of recognizable words used in connection with products" with which they are otherwise un-associated. *Freebies*, 364 F.3d at 539 (citation omitted); *accord Sara Lee Corp.*, 81 F.3d at 464. "Some examples of fanciful marks are Clorox®, Kodak®, Polaroid®, and Exxon® . . . Examples [of arbitrary marks] include Tea Rose® flour, Camel® cigarettes, and Apple® computers." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 11.03, 11.04 (4th ed. 2014) [*hereinafter* McCarthy]).

Suggestive marks "connote, without describing, some quality, ingredient, or characteristic of the product . . . . [T]hey conjure images of the associated products." *Sara Lee Corp.*, 81 F.3d at 464. "[S]uggestive marks are inherently distinctive and, like arbitrary or fanciful marks, qualify for registration without any showing of 'secondary meaning.'" *Freebies*, 364 F.3d at 539 (citation omitted); *accord Sara Lee Corp.*, 81 F.3d at 464 (citing 1 McCarthy, §

11.23) ("Coppertone®, Orange Crush®[], and Playboy® are good examples of suggestive marks
. . . .").

Descriptive marks fall in the middle. They "describe a function, use, characteristic, size,
or intended purpose," are not inherently distinctive, and are protected only if they have acquired
a "secondary meaning." *See Freebies*, 364 F.3d at 539. Secondary meaning exists when, in the
minds of the public, the primary significance of the term identifies the source of the product
rather than the product itself. *See id.* (citations and quotations omitted); *Nat'l Fed'n of the Blind,
Inc. v. Loompanics Enterprises, Inc.*, 936 F. Supp. 1232, 1248 (D. Md. 1996) ("Secondary
meaning provides an otherwise unprotectable descriptive mark with 'acquired distinctiveness.'")
(quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)); *accord Sara Lee
Corp.*, 81 F.3d at 464 (citing 1 McCarthy, § 11.08) ("Examples of such 'descriptive' marks
include After Tan post-tanning lotion, 5 Minute glue, King Size men's clothing, and the Yellow
Pages telephone directory.").

"A generic mark merely employs the common name of a product or service . . . [and] is
ineligible for trademark protection." *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp.
3d 525, 547 (D. Md. 2014) (citing *Sara Lee Corp.*, 81 F.3d at 464 and *Ale House Management,
Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 140 (4th Cir. 2000)) (internal quotation marks
omitted). For example, protection of a generic mark could lead to a company "being forbidden to
describe a [vehicle] as a 'car' or an 'automobile' because [another company] had trademarked
these generic words." *Retail Services, Inc.*, 364 F.3d at 538. Other examples of generic marks are
bleach, copies, and cigarettes. *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d
383, 394 (4th Cir. 2009); *see also Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th
Cir. 1996); 2 McCarthy, § 12.03.

Trademark registration is *prima facie* evidence that the registered term is not generic.[7] *See* 15 U.S.C. § 1115(a); *Glover*, 74 F.3d at 59. That said, a party can still challenge a mark registered on the Principal Register because registration "shall not preclude another person from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a). The presumption of validity simply shifts the burden of producing evidence that the term is generic to the party seeking to invalidate the registration. *Convenient Food Mart, Inc. v. 6–Twelve Convenient Mart, Inc.*, 690 F. Supp. 1457, 1460 (D. Md. 1988), *aff'd* 870 F.2d 654 (4th Cir. 1989) (citing *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986)); *Freebies*, 364 F.3d at 544 (citing *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996)); *George & Co.*, 575 F.3d at 395 ("We are obligated to defer to the determination of the USPTO, which constitutes prima facie evidence of whether a mark is descriptive or suggestive."). *Cf. Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, No. 7:02CV00611, 2006 WL 1134129, at *2 (W.D. Va. Apr. 24, 2006) (citing *Lonestar Steakhouse & Saloon, Inc.*, 43 F.3d at 934 ("Given the difficulty in determining which category to place a mark, courts give due regard to the USPTO classification of a mark in accepting or rejecting a mark for registration.").

A party asserting a mark is generic must

> (1) identify the class of product or service to which use of the mark is relevant; (2) identify the relevant purchasing public of the class of product or service; and (3) prove that the primary significance of the mark to the relevant public is to identify . . . [a] class of product or service.

---

[7] 15 U.S.C. § 1115(a) states that the registration of a mark on the Principal Register constitutes *prima facie* evidence of (1) "the validity of the registered mark," (2) the "registration of the mark," (3) "the registrant's ownership of the mark," and (4) "the registrant's exclusive right to use the registered mark in commerce."

*Glover*, 74 F.3d at 59.

Evidence offered to rebut the presumption of validity may come from any number of sources, including "purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications." *Glover*, 74 F.3d at 59; *see In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 1570 (Fed.Cir. 1987) ("Evidence of the public's understanding of the term may be obtained from any competent source . . . ."). Other common sources include evidence of "generic use by competitors, generic use of the term by the mark's owners, and use of the term by third parties in trademark registrations." *Nartron*, 305 F.3d at 406. "If sufficient evidence . . . is produced to rebut the presumption, the presumption is 'neutralize[d]' and essentially drops from the case, although the *evidence* giving rise to the presumption remains." *Freebies*, 364 F.3d at 543 (alteration in original) (quoting *Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 818 (4th Cir. 2001)).

Although a mark's genericness is a question of fact, resolution of this question on summary judgment is nevertheless appropriate where "the evidence is so one-sided that there can be no doubt about how the question should be answered." *Freebies*, 247 F. Supp. 2d at 825 (quoting *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996)); *see also Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.*, 690 F. Supp. 1457, 1461 (D. Md. 1988), *aff'd*, 870 F.2d 654 (4th Cir. 1989).

On this issue, the Court is guided by the undisputed fact that the USPTO granted Plaintiff Ramirez a trademark registration for its use of the terms "STOMP ROCKET" and "STOMP" on February 2, 1999 and April 4, 2000, respectively. That the USPTO granted this registration is *prima facie* evidence that the trademark in question is not generic or descriptive (without a

secondary meaning), and therefore entitled to protection. *See U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002).

Furthermore, the USPTO did not request from Plaintiff evidence of secondary meaning. ECF Nos. 71-11, 71-16. Accordingly, "[s]ignificant weight must be attached to this registration," *Resorts of Pinehurst v. Pinehurst Nat. Corp.*, 148 F.3d 417, 422 (4th Cir. 1998), and this Court must infer that the USPTO concluded that the marks were, at the least, suggestive. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984); *see also Synergistic International LLC v. Korman*, 470 F.3d 162, 172 ("If the PTO did not require proof secondary meaning, it has presumptively determined the mark to be 'suggestive.'"). This strengthens the presumption that the marks are entitled to protection. Thus, the burden shifts to Defendants to establish by a preponderance of the evidence genericness or at least descriptive and without secondary meaning. *Freebies*, 364 F.3d at 542; *Nat'l Fed'n of the Blind, Inc.*, 936 F. Supp. at 1247.

Defendants contend that "the term 'stomp rocket' generically refers to an air missile toy that operates by stomping on an air bladder and launching a rocket into the sky, and not to identify and distinguish a particular source." Defs.' Br. in Opp'n, ECF No. 78 at 24 (emphasis omitted). To establish this point, Defendants put forth the following evidence:

1. A 2003 press release and 2004 letter from Plaintiff D&L that includes Plaintiff Ramirez' statement that the term stomp rocket has become "a generic term," used within the toy industry to describe rockets that are launched with air or water pressure when stomping on a rubberized bladder. ECF No. 78-22 at 2–3.

2. An internet search of "how to make a stomp rocket," which resulted in "dozens of pages of educational and do it yourself projects on building a stomp rocket." ECF No. 78 at 24.

3. A book titled "Stomp Rockets, Catapults and Kaleidoscopes" by Curt Gabrielson. ECF No. 78-23.

4. A list of the names of "virtually identical" air missile toys. ECF No. 78 at 16.

Defendants also provide testimony of Peter Magalhaes as a "toy marketing expert," but as discussed above, this opinion is inadmissible under Rule 702 and will not be considered. *See Raynor v. Pugh*, 817 F.3d 123, 131 (4th Cir. 2016) (citing Fed. R. Civ. P. 56(c)) ("A nonmoving party seeking to prevent summary judgment must show a genuine dispute of fact using admissible evidence . . . ."); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 535 (D. Md. 2007) (citing Fed. R. Civ. P. 56(c)) ("[T]o be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible in evidence."); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Taking the evidence in the light most favorable to Defendants, no genuine issue of material fact rebuts the presumption that the terms "Stomp" and "Stomp Rocket" are suggestive and not generic. First, the Defendants' reliance on Plaintiff Ramirez's statement is misplaced. While evidence of the owner's generic use may be "'strong evidence of genericness,'" *Freebies*, 364 F.3d at 545 (quoting 2 McCarthy, § 12.13), it must be "repeated and consistent instances of such usage." *Pom Wonderful LLC v. Hubbard*, No. CV1306917RGKJPRX, 2016 WL 3621281, at *7 (C.D. Cal. June 29, 2016) (citing *Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099, 1120 (D. Or. 2014) (emphasis added) (holding that a triable issue of fact exists where the defendant "throughout its own website, repeatedly uses the phrase 'porn tube' generically to describe a type of video and not to identify the source of the videos"); see also *Freebies*, 364 F.3d 535, 545 (4th Cir. 2004); *Network Automation, Inc. v. Hewlett-Packard Co.*, No. CV 08-4675-JFW RZX, 2009 WL 5908719, at *5 (C.D. Cal. Sept. 14, 2009) (finding a triable issue of fact where the trademark owner used the term "network automation" generically on numerous occasions); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1030

(N.D. Cal. 2008) (ruling that the mark, "bottled at the source," has become generic because the owner repeatedly used the phrase "in describing the product as well as in its advertising")).

By contrast, "casual, non-purchasing uses of marks are not evidence of generic usage because primary significance is determined by the use and understanding of the mark in the context of purchasing decisions." *Elliot v. Google Inc.*, 45 F. Supp. 3d 1156, 1162 (D. Ariz. 2014), *appeal dismissed* (Jan. 12, 2015) (quoting 2 McCarthy, § 12:8) (internal quotations omitted); *accord* 2 McCarthy, § 12:8 (citing Xerox and Kleenex of examples where "[b]uyers or users of a product may sometimes use a trademark in a generic sense in casual conversation even though when questioned, those persons are fully aware of the trademark significance of the term.").

Here, Defendants marshal only two isolated and decade-old statements from Plaintiff Ramirez where he refers to STOMP ROCKET as generic. These statements also included capitalization of "Stomp Rocket" with the "TM" (trademark) symbol, undercutting any claims that Plaintiff meant that Stomp Rocket is "generic" as a matter of trademark law. *See* ECF No. 78-22 at 2. Thus, Plaintiff's isolated use of the term "generic" does not transform the mark into one of legal genericness. Notably, Plaintiff Ramirez retracted the statement's use of the word "generic" almost as soon as he made it, corroborating that Ramirez did not mean to convey legal genericness. *See* ECF No. 83-3 (requesting his statement retracted and replaced with a version devoid of references to "generic"). Accordingly, this evidence construed most favorably to Defendant is simply insufficient to reach a jury on whether the mark is rendered generic.

Defendants further contend that a "Google search" for the combined term "how to make a stomp rocket" generates sufficient evidence to send the question of genericness to the jury. Defs.' Br. in Opp'n, ECF No. 78 at 15. Defendants' specific results are:

www.sciencetoymaker.org/airRocket/index.html
www.exploration.grc.nasa.gov/education/rocket/rktsstomp.html
www.instructables.com/id/Paper-Stomp-Rockets-Easy-and-Fun
www.instructables.com/id/DIY-Stomp-Rockets
www.youtube.com/watch?v=QSS6ybomPLk
www.snapguide.com/guides/make-a-stomp-rocket/
www.makezine.com/2013/05/23/ten-dollar-stomp-rocket-launcher
www/thinkeryaustin.org/.../we-have-liftoff-make-a stomp-rocket-launcher

Defendants' proffered Google-search evidence is insufficient for three main reasons. First, under Rule 56 of the Federal Rules of Civil Procedure, "unsworn, unauthenticated documents cannot be considered on a motion of summary judgment." *Vales v. Preciado*, No. CBD–05–3110, 2012 WL 115425, at *3 (D. Md. Jan. 13, 2012) (quoting *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). *See also Putt-Putt, LLC v. 416 Constant Friendship, LLC*, 936 F. Supp. 2d 648, 655 (D. Md. 2013) (same finding with regards to unauthenticated documents attached to pleadings). Plaintiffs rightfully contest the reliability of the proffered documents as being unauthenticated hearsay. The Court agrees and will not consider the search results on that basis.

Second, even if the Court were to consider these search results as substantive evidence, they are nonetheless of little worth because the search term is too narrowly defined and yields results which only include the term "stomp rocket." *See McKillip Indus., Inc. v. Integrated Label Corp.*, 477 F. Supp. 2d 928, 931 (N.D. Ill. 2006) (finding self-selective internet searches of counsel to be of minimal probative value). This search reveals nothing about how air launcher toys of similar design are referred in the relevant commercial market so as to aid the factfinder in determining whether STOMP or STOMP ROCKET are indeed generic terms describing air launcher toys.

Third, even if the search results did not suffer from the self-selection infirmity, none of the identified websites relate to air missile toys sold in commerce by competitors. Rather, they

relate to "educational and do it yourself" projects. Defs.' Br. in Opp'n, ECF No. 78 at 15.

Defendant's third piece of evidence—the Book entitled "Stomp Rockets, Catapults and

Kaleidoscopes"—is similarly an educational how-to publication. As such, the websites and book

provide precious little evidence of how the consuming public or toy launcher industry uses the

term. *See McKillip Indus., Inc. v. Integrated Label Corp.*, 477 F. Supp. 2d 928, 930 (N.D. Ill.

2006) (citing *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y. 1921) (Learned Hand,

J.)) (finding the media sources ambiguous as to the relevant public perception of the product at

issue because "[t]he test is the common usage or understanding by the usual buyer and other

relevant members of the public."). *Cf. Elliot*, 45 F. Supp.3d at 1162 (citing 2 McCarthy, § 12:8)

(such casual, non-purchasing uses "are not evidence of generic usage" and are, therefore,

irrelevant to the question of genericness).

Apart from Defendants' proffered evidence, the Court may look to the dictionary for

evidence of common usage to support a finding of genericness. *See Field of Screams, LLC v.

Olney Boys & Girls Cmty. Sports Ass'n*, No. DKC 10-0327, 2011 WL 890501, at *6 (D. Md.

Mar. 14, 2011) (quoting 2 McCarthy, § 11:51 ("Dictionary definitions can be very helpful in

determining the commonly understood descriptive meaning of a word.")); *Freebies*, 364 F.3d

535, 544–45 (4th Cir. 2004) ("Although not controlling, dictionary definitions are relevant and

sometimes persuasive on the issue of genericness based upon the assumption that dictionary

definitions usually reflect the public's perception of a word's meaning and its contemporary

usage.") (internal quotations omitted). "Dictionary definitions are particularly helpful where a

composite mark which was 'invented' by its holder is listed in the dictionary as the accepted

designator for a unique product." *Nat'l Fed'n of the Blind, Inc. v. Loompanics Enterprises, Inc.*,

936 F. Supp. 1232, 1248 (D. Md. 1996) (*citing Murphy Door Bed Co. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 101 (2d Cir. 1989)).

Here, with regards to the mark "Stomp Rocket," Webster's Third New International Dictionary yields no results.[8] As for the mark "Stomp," Webster's defines it as "to walk with a loud heavy step usually in anger" or "a jazz dance marked by heavy stamping." *See* Webster's Third New International Dictionary 2240 (1993 ed.). The definition includes no reference to a rocket or toy of any type. Thus, the dictionary is unhelpful to Defendants.

Policy considerations animating trademark classifications further support the Court's determination that no reasonable fact finder could find STOMP ROCKET and STOMP to be generic. A term is found to be generic where otherwise granting it protective trademark status would impose on competitors and consumers "excessive costs of information" by requiring an "elaborate and possibly confusing paraphrase" to refer to their organizations and services. *Nat'l Fed'n of the Blind, Inc.*, 936 F. Supp. at 1250 (D. Md. 1996) (quoting *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996)); *see also Gazette Newspapers, Inc. v. New Paper, Inc.*, 934 F. Supp. 688, 693 (D. Md. 1996) (quoting *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986)) ("To allow a company to trademark a generic word would make it difficult for competitors to market their own brands of the same product.'"); *cf. Cmty. First Bank v. Cmty. Banks*, 360 F. Supp. 2d 716, 725 (D. Md. 2005) (quoting *Retail Services*, 364 F.3d at 538) ("To permit a trademark infringement action based upon Community Banks' use of those generic terms is akin to forbidding Chevrolet from

---

[8] Where one of the challenged marks includes a composite mark made up of ordinary terms, the definitions of the component parts provide little probative value of the terms' genericness. *See Nat'l Fed'n of the Blind, Inc. v. Loompanics Enterprises, Inc.*, 936 F. Supp. 1232, 1248 (D. Md. 1996) (citing *Door Systems, Inc. v. Pro–Line Door Systems, Inc.*, 83 F.3d 169, 171 (7th Cir. 1996); *Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902, 912–13 (9th Cir. 1995)).

describing its products "as a 'car' or an 'automobile' because Ford or Chrysler or Volvo had trademarked these generic words.").

But this is not the case here. Maintaining STOMP and STOMP ROCKET as protectable marks does not erect expensive or syntactically convoluted barriers to Defendants calling its toy launcher by another easily definable and non-infringing name. *See* Defs.' Br. in Opp'n, ECF No. 78 at 16. In fact, Defendants eventually re-packaged and re-branded the Banzai product in question as the "Banzai Power Launcher Rocket." Declaration of Keith Hobson, ECF No. 78-1 at 3; No. 78-4. Furthermore, Defendants' own list of "virtually identical toys," demonstrate many different ways to refer to the same genre of toy as something other than "Stomp Rocket." *See* Defs.' Br. in Opp'n, ECF No. 78 at 16 (listing examples of air missile toys including "Airburst Mighty Missile Pumped Power Rocket; Kids Stomp Pop-Air Pump Foam Stomp Flying Rocket by A.S. Plastic Toys Co., Ltd.; Zing Blast Off X6 Zoom Rocketz; Jump Rocket Launcher; Sonic Boom Air Rocket Launch Set; Airburst Air Powered Rocket with Launcher.").

In sum, Defendants have failed to adduce evidence sufficient to rebut that Plaintiff's incontestable marks are conclusive of validity and ownership. *Putt Putt*, 936 F. Supp. 2d at 654. A handful of inadmissible educational websites, a do-it-yourself crafts book, and two isolated and very aged comments from Plaintiff Ramirez are insufficient for a reasonable factfinder to determine the mark has become generic. Plaintiffs are thus entitled to summary judgment as to the validity of their marks.

### b.  Likelihood of Confusion

With respect to the likelihood of confusion—the second prong of the trademark infringement test—Plaintiffs similarly have sustained their burden when viewing all evidence in the light most favorable to the Defendants. "The ultimate question, for purposes of determining

liability in trademark infringement actions, is whether there exists a likelihood that an appreciable number of ordinary prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question." *Nat'l Fed'n of the Blind, Inc. v. Loompanics Enterprises, Inc.*, 936 F. Supp. 1232, 1241 (D. Md. 1996) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990)) (alterations omitted).

To determine whether there is a likelihood of confusion between the two marks, the Court considers a variety of factors including (a) the strength or distinctiveness of the mark; (b) the similarity of the two marks; (c) the similarity of the goods/services the two parties use in their business; (d) the similarity of the facilities the two parties use in their businesses; (e) the similarity of the advertising used by the two parties; (f) the defendant's intent; (g) actual confusion. *Pizzeria Uno Corp v. Temple*, 747 F.2d 1522 (4th Cir. 1984). In reviewing the *Pizzeria Uno* factors, the Court finds that all material and admissible evidence, construed most favorably to Defendants, nonetheless supports a likelihood of confusion. The Court will address each pertinent factor with more particularity.

### (1) The Strength or Distinctiveness of the Mark

Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark. The strength of the mark consists of both conceptual strength and commercial strength.[9] *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006). With regards to the marks' conceptual strength, as discussed extensively above, the marks are suggestive.

---

[9] "[A]lthough the inquiry into whether a mark has secondary meaning sufficient to be protectable under the Lanham Act is similar to the commercial-strength inquiry, . . . the two are analytically independent." *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006) (citing 2 McCarthy, § 11:83).

But "the placement of a mark in either the suggestive or descriptive category is merely the first step in assessing the strength of a mark for purposes of the likelihood of confusion test." *Petro Stopping Ctrs., L.P. v. James River Petroleum*, 130 F.3d 88, 93 (4th Cir. 1997) (citing *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir. 1991)). "The commercial-strength inquiry, by contrast, looks at the marketplace and asks if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 174 (4th Cir. 2006) (quoting *CareFirst*, 434 F.3d at 269).[10] Courts consider six factors when accessing commercial strength: (a) the plaintiff's advertising expenditures; (b) consumer studies linking the mark to a source; (c) the plaintiff's record of sales success; (d) unsolicited media coverage of the plaintiff's business; (e) attempts to plagiarize the mark; and (f) length and exclusivity of the plaintiff's use of the mark. *See George & Co.*, 575 F.3d at 395 (applying secondary meaning factors to its commercial strength inquiry); *Perini*, 915 F.2d at 125 (providing same six-factor test for secondary meaning).

Plaintiffs' STOMP ROCKET has considerable commercial strength as demonstrated by its "substantial revenues" (over four million dollars of sales in 2013 alone). *See Pure Fishing, Inc. v. Redwing Tackle, Ltd.*, 888 F. Supp. 2d 726, 731 (D.S.C. 2012), opinion amended and supplemented (Aug. 24, 2012); *Polo*, 627 F. Supp. 2d at 887 (volume of sales indicative of strength of mark recognition). Plaintiffs also have used the STOMP and STOMP ROCKET marks in conjunction with air missile toys for over 20 years, and operated the website

---

[10] The commercial strength inquiry is "similar to the 'secondary meaning' inquiry," and considers the plaintiff's investment in and extent of advertising, commercial success, and length and exclusivity of use of the mark; consumer studies identifying the mark with the source, "unsolicited media coverage of the plaintiff's business," and plagiarizing attempts on the mark. *George & Co.*, 575 F.3d at 395 (citing *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)).

www.stomprocket.com for approximately 19 years. *See* ECF No. 71-6 at 1; ECF No. 95-6 at 22.

The Stomp Rocket product has garnered two toy industry awards. ECF No. 95-6 at 16–17. As a

result of Plaintiffs' success, they have been the victim of attempted infringements on the long-

held and well-known mark. *See e.g.*, ECF No. 71-51 at 2 ("the federal agency has allowed

knockoff rockets, of the same design, to remain on store shelves."); *see also* ECF No. 78-22 at 2

("What also trouble's [sic] Ramirez is the fact that "other rocket" clones in stores such as Toys

'R US and thousands of other specialty stores have remained on the shelves . . . ); ECF No. 78-2

at 3 ("[M]ajor problems have taken their toll on D&L . . . [including] the scourge of our

industry—the knockoff artists."); ECF No. 71-45 (complaint in *JFJ Toys, Inc. v. Five Below Inc,*

*et al.*, 8:10-CV-0019 (D. Md. Jan 5, 2010) (alleging trademark infringement of the STOMP

ROCKET mark on an identical toy); *see also* ECF No. 95-4 at 61–63 (providing a side-by-side

comparison of Plaintiffs' Super Stomp Rocket product and an allegedly infringing Five Below's

Super Stomp Rocket product).

Defendants assert that the marks are "commercially weak as having virtually little

recognition even among industry professionals," ECF No. 78 at 26, but set forth no specific facts

that create a genuine issue in this regard. *See Synergistic Int'l, LLC v. Korman*, 402 F. Supp. 2d

651, 659–60 (E.D. Va. 2005), *aff'd in part, vacated in part, remanded*, 470 F.3d 162 (4th Cir.

2006) (vacated as to the award of damages without specifying the equitable factors it

considered). Thus, the evidence overwhelmingly supports this factor in favor of Plaintiffs.

### (2) Similarity of the Two Marks

Similarity of the parties' marks focuses on the "dominant portion" of each to determine

"whether there exists a similarity in sight, sound, and meaning" that would "result in confusion."

*George & Co.*, 575 F.3d at 396; *see also Lone Star*, 43 F.3d at 936 ("[T]he marks need only be

sufficiently similar in appearance, with greater weight given to the dominant or salient portions

of the marks."). The Court may consider the products' packaging, graphics, and coloring. *See*

*George & Co.*, 575 F.3d at 397 (citing *Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352,

355 (7th Cir. 1983) (holding that "Yogowhip" and "Miracle Whip" are dissimilar because they

look and sound different and because of the differences in the product labels)); *Petro*, 130 F.3d at

94 (noting differences in color, dominant portion, and graphics).

Courts are particularly inclined to find similarity when there is overlap in the marks'

dominant terms, even if the marks contain other dissimilar words. *See, e.g.*, *Lone Star*, 43 F.3d at

936 (finding the LONE STAR GRILL mark sufficiently similar to LONE STAR

STEAKHOUSE & SALOON mark); *Pizzeria Uno*, 747 F.2d at 1534–35 (finding the TACO

UNO mark sufficiently similar to PIZZERIA UNO mark); *Sweetwater Brewing Co., LLC v.*

*Great Am. Restaurants, Inc.*, 266 F. Supp. 2d 457, 462–63 (E.D.Va.2003) (finding the

SWEETWATER TAVERN mark sufficiently similar to SWEETWATER BREWING

COMPANY mark); *Teaching Co. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 581–82

(E.D. Va. 2000) (finding the GREAT MINDS OF MEDICINE mark "extremely similar" to

GREAT MINDS OF THE WESTERN INTELLECTUAL TRADITION mark); *accord Select*

*Auto Imports Inc. v. Yates Select Auto Sales, LLC*, 119 U.S.P.Q.2d 1567, 2016 WL 3742312 *12

(E.D. Va. 2016).

Here, the language of Plaintiffs' mark and mark on the Banzai product are identical, as

both use the language "Stomp Rocket." Moreover, the product packaging for Plaintiffs' Super

Stomp Rocket and the Banzai Stomp Rocket are strikingly similar. ECF No. 95-7 (photograph of

Defendants' Banzai Stomp Rocket on left and Plaintiffs' Super Stomp Rocket on right). Both

product boxes use bold typeface and yellow lettering with a red accent to highlight the STOMP

ROCKET mark. *Id.* Both product boxes also depict two boys launching an air missile toy on a grass field with the missile toy in mid-flight and air streaming behind the rocket. *Id.*

Defendants contend that the Parties' marks are not similar because of the Banzai Stomp Rocket's use of the Banzai house mark on the upper left hand corner of the product's box. Defs.' Br. in Opp'n, ECF No. 78 at 32. This is not sufficient to send this factor to a jury on the issue of likelihood of confusion. A confusing use does not become justified simply because a defendant tacks on a house mark to the infringing product. *See Select Auto Imports Inc. v. Yates Select Auto Sales, LLC*, 119 U.S.P.Q.2d 1567, 2016 WL 3742312 *12 (E.D. Va. 2016) (citing *Nike, Inc. v. WNBA Enterprises*, LLC, 85 U.S.P.Q.2d 1187, 2007 WL 763166 *14 (T.T.A.B. Mar. 13, 2007) (The addition of a house mark "to one of two otherwise similar marks will not serve to avoid a likelihood of confusion.")); *see also In Re Fiesta Palms, LLC*, 85 U.S.P.Q.2d 1360 (TTAB 2007) (finding that CLUB PALMS MVP confusingly similar to MVP); *Decatur Fed. Sav. & Loan Ass'n v. Peach State Fed Sav. & Loan Ass'n*, No. C–78–904–A, 1978 WL 21348, at *8 (N.D.Ga. Dec. 29, 1978) (finding DECATUR FEDERAL SAVINGS SHOP confusingly similar to THE SAVINGS SPOT); *Frostig v. Saga Enters., Inc.*, 272 Or. 565, 568 (1975) (finding that STUART ANDERSON'S BLACK ANGUS RESTAURANT confusingly similar to BLACK ANGUS STEAKHOUSE); *cf. T&T Mfg. Co. v. A.T. Cross Co.*, 449 F. Supp. 813, 822 (D.R.I. 1978) (holding that permitting a junior user to appropriate a senior user's established mark merely by adding a house mark "would make a mockery of trademark law"); *Sterling House, Inc. v. Dell Pub. Co.*, No. 72 CIV. 1520, 1972 WL 17658, at *3 (S.D.N.Y. May 24, 1972) (finding that defendant's use of a house mark, which was apparently done "deliberately to take the curse off its imitation of plaintiff's cover," does not avoid confusion).

To the contrary, appending a house mark to an infringing mark can "aggravate, rather than mitigate confusion." *Select Auto Imports*, 2016 WL 3742312 *12 (citing *Menendez v. Holt*, 128 U.S. 514, 521 (1888)). Known as "reverse confusion," [11] Defendant's housemark may prompt consumers to associate with the defendant's infringing mark the goodwill that Plaintiff's longtime use of the mark has engendered. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 230 (3d Cir. 2000) ("As to the presence of the house mark on the Victoria's Secret product, not only is there the possibility that consumers will fail to remember the mark when encountering A & H's swimwear, but there is also the possibility that the mark will *aggravate*, rather than mitigate, reverse confusion, by reinforcing the association of the word "miracle" exclusively with Victoria's Secret."). Thus, this fact does not advance Defendant's position.

Defendants also place great weight on *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263 (4th Cir. 2006), when assessing this factor. There, the Fourth Circuit passed on whether "First Care" infringed on the mark "Care First BlueCross BlueShield." Because the "Care First" mark was weak, the Court reasoned that plaintiff's addition of a prominent mark,

---

[11] Notably, the Fourth Circuit has not adopted the doctrine of reverse confusion. *Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc.*, 188 F.3d 501 (table), 1999 WL 639165, *12 (4th Cir. 1999) . Numerous lower courts, however, have considered evidence of reverse confusion within the "likelihood of confusion" analysis. *See, e.g.*, *Teal Bay Alls., LLC v. Southbound One, Inc.*, No. CIV.A. MJG-13-2180, 2015 WL 401251, at *13 (D. Md. Jan. 26, 2015), *appeal dismissed* (Aug. 19, 2015); *Fuel Clothing Co. v. Nike, Inc.*, 7 F. Supp. 3d 594, 624 (D.S.C. 2014) (applying theory but finding no likelihood of confusion among relevant customers); *Coryn II*, 868 F. Supp. 2d at 468 (applying, on a Rule 59(e) motion, the doctrine of reverse confusion when reviewing a jury verdict finding a likelihood of confusion); *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F.Supp.2d 571 (M.D.N.C. 2009) (applying reverse confusion doctrine based on *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3rd Cir. 2000)); *Takeall v. Pepsico, Inc.*, 809 F. Supp. 19, 23–24 (D.Md. 1992) ("[S]ummary judgment is also warranted on the plaintiff's claims for 'reverse confusing and passing off.' *But see MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 347 (4th Cir. 2001) (Niemeyer, J.) (dissenting because the suit presented "a classic case of 'reverse confusion'" (citing *A & H Sportswear*, 237 F.3d at 228)).

"BlueCross BlueShield," reduced the likelihood of confusion notwithstanding their textual similarity. *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 272 (4th Cir. 2006) (citing *Duluth News–Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1097 (8th Cir. 1996) (conducting comparison of marks using "Duluth News–Tribune" rather than "News–Tribune" alone because "News–Tribune" was a weak mark)). Survey evidence, so the Court reasoned, demonstrated that the trademark holder's own dominant mark "BlueCross BlueShield" was more distinctive than the "CareFirst" mark. *Id.* at 271 n.5.

But *CareFirst* does not aid the Defendants here. Unlike *CareFirst*, no evidence exists that Plaintiff's mark is weak. Further, Defendants, not Plaintiff's, added the house mark "Banzai" to Stomp Rocket and in a manner that does not render "Banzai" dominant. *See Petro*, 130 F.3d at 94 ("To the extent that the James River mark has a dominant portion, it appears to be the large JR logo, not the term PETRO."). Accordingly, Defendant cannot avoid a finding of similarity by adding a less prominent house mark to a strong dominant mark. *See Select Auto Imports*, 2016 WL 3742312 *12. No reasonable factfinder, therefore, could find Defendant's use of "Stomp Rocket" escapes confusion because the house mark Banzai is also affixed on the package.

### (3) Similarity of the Goods

With regard to the third factor, the similarity of the goods or services requires "some degree of overlap" but need not be identical or in direct competition with each other for this factor to be satisfied. *George & Co.*, 575 F.3d at 397 (citing *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001)). Although Plaintiffs maintain that Defendants' product is of inferior quality, ECF No. 71-1 at 31 (citing ECF No. 72-20 (report indicating defective claims)), the products are the same type of air missile toy. *See* ECF No. 95-7 (photograph of

Defendants' Banzai Stomp Rocket on left and Plaintiffs' Super Stomp Rocket on right).

Defendants offer nothing to rebut this factor, and so it indisputably weighs in favor of Plaintiffs.

### (4) Similarity of the Facilities

With respect to similarity of the facilities, the likelihood of confusion may also be

increased if both goods are sold in the same channels of trade. *See Renaissance Greeting Cards,*

*Inc. v. Dollar Tree Stores, Inc.*, 405 F. Supp. 2d 680, 696 (E.D. Va. 2005), *aff'd*, 227 F. App'x

239 (4th Cir. 2007); 4 McCarthy, § 24.51; *cf. Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F.

Supp. 2d 305, 316–17 (S.D.N.Y. 2000) (no likelihood of confusion between high-fashion

conscious, high income consumers in upscale specialty stores and casual clothing marketed to

young, urban males in inexpensive retail outlets in urban neighborhoods). The relevant inquiry

under this factor is whether the goods are sold to the same class of consumers in the same

context. *See* 4 McCarthy, § 24.51; *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316,

319 (4th Cir. 1992).

It is undisputed that both the Banzai Stomp Rocket and Plaintiffs' Stomp Rocket are sold

in brick-and-mortar retail stores and specialty toy stores and on the internet through online retail

stores and their own websites.[12] *See* ECF No. 71-49 at 4–5; ECF No. 71-37 (examples of

Plaintiffs' online sales); *cf. Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F.

Supp. 2d 680, 696 (E.D. Va. 2005), *aff'd*, 227 F. App'x 239 (4th Cir. 2007) (citing *Century 21*

*Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 877 (Fed. Cir. 1992) ("An opposer

does not have the burden to show sales of an infringing product by a specific chain of

supermarkets or agents. Rather . . . , an opposer must show the sale of an infringing product in

---

[12] Defendants do not dispute that the goods are sold through similar facilities. ECF No. 78.

supermarkets or by agents in general, i.e., in similar trade channels.")). In fact, both products

were offered through Defendants' own websites. *See* ECF No. 71-41 (offering for sale Plaintiffs'

product); ECF No. 71-48 (offering for sale the Banzai Stomp Rocket); ECF No. 72-18 (same).

Defendants have put forward no evidence in contradiction. This factor, therefore, supports

summary judgment in favor of Plaintiffs.

### (5) Similarity of the Advertising

In comparing advertising, courts look to the media, geographic scope, appearance, and

content of the parties' advertisements. *CareFirst*, 434 F.3d at 273. Plaintiffs' advertising is

limited and directed almost entirely to its wholesale customers: retail stores. Plaintiffs'

promotional structure includes brochures and attendance at national toy shows throughout the

year. ECF No. 78-21 at 3. Defendants' sole evidence of promotion of the Banzai Stomp Rocket

is through "end caps prominently displayed in Kmart stores." Defs.' Br. in Opp'n, ECF No. 78 at

33. Accordingly, the evidence as to this factor is minimal and favors neither party.

### (6) Defendants' Intent

Although intentionality is not a necessary prerequisite to a finding of trademark

infringement, it can be powerful evidence cutting in favor of Plaintiff. *Polo*, 627 F. Supp. 2d at

889.[13] *See also A.C. Legg Packing Co. v. Olde Plantation Spice Co.*, 61 F. Supp. 2d 426, 431 (D.

Md. 1999). Here, the undisputed evidence reflects that Plaintiffs sent Defendants two cease and

desist letters in May of 2014 putting Defendant on actual notice of their infringement. ECF No.

95-7 at 2, 5. Plaintiffs then served Defendants with a copy of their Complaint on November 14,

---

[13] Plaintiff also urged at oral argument that this Court grant summary judgment as to punitive damages and attorneys' fees.  Although evidence of intent is relevant to such determination, *see e.g.*, *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 588 (M.D.N.C. 2009) and *A.C. Legg Packing Co. v. Olde Plantation Spice Co.*, 61 F. Supp. 2d 426, 431 (D. Md. 1999) (citing *H.W. Carter & Sons, Inc. v. William Carter Co.*, 913 F. Supp. 796 (S.D.N.Y. 1996)), this determination is premature. Damages are not before the Court on summary judgment.

2014 and November 17, 2014, ECF Nos. 15, 16, 17. Defendants nonetheless continued to sell the infringing product through early 2015. *See* ECF No. 71-38 at 5 (admission of Defendant K-Mart that it "ceased selling the Banzai Air Missile Toy using the Allegedly Infringing Mark in or about January of 2015"); ECF No. 71-39 (chart summarizing Defendants' sales of the Banzai Stomp Rocket); ECF No. 95-7 (second cease and desist letter noting "the infringing products are still posted" as of May 19, 2014). Then, in the following retail season, it is undisputed that Defendant Kmart purchased air missile toys repackaged as the "BANZAI Power Launcher Rocket." Declaration of Keith Hobson, ECF No. 78-1 at 3; No. 78-4. This evidence demonstrates that Defendants knew to remove the infringing mark but chose to wait until the following season before so doing. Declaration of Keith Hobson, ECF No. 78-1 at 3; No. 78-4. Such behavior is consistent with bad faith. *See Field of Screams, LLC v. Olney Boys & Girls Cmty. Sports Ass'n*, No. DKC 10-0327, 2011 WL 890501, at *7 n.10 (D. Md. Mar. 14, 2011) ("Moreover, Defendant's continuing use of the mark after receipt of a cease and desist letter might support an inference of bad faith." (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 937 (4th Cir. 1995)). Accordingly, the undisputed evidence on this factor regarding the Defendants' intent weighs in favor of Plaintiffs.

### (7) Actual Confusion

Lastly, Plaintiffs point to Defendant-employees' own reference to their own product as a "STOMP ROCKET," *see e.g.*, ECF Nos. 71-3 at 4, 72-8 at 3, 72-9 at 7, 72-11 at 2, 72-12 at 5, as evidence of the employees' actual confusion as to which product is associated with the mark. *See George & Co.*, 575 F.3d at 398 ("Actual confusion can be demonstrated by both anecdotal and survey evidence."); *cf. Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 156 (4th Cir. 2012) ("Both [anecdotal and survey] evidence are relevant, and neither category is

necessarily required to prove actual confusion."). Importantly, "[i]f a professional, such as a commercial buyer, is confused, it is proof of the likely confusion of consumers, who are less likely to detect differences in marks." 4 McCarthy, § 23:100 (4th ed.) (citing *Society of Financial Examiners v. National Ass'n of Certified Fraud Examiners Inc.*, 41 F.3d 223, 228 (5th Cir. 1995) (Evidence of confusion of consumers can be inferred from confusion of retailers.); *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, 2003 WL 251318, at *10 (N.D. Tex. 2003) (Testimony of trademark holder's employee that he was confused is evidence that consumers were likely to be confused.); *Lisa Frank, Inc. v. Impact Intern., Inc.*, 799 F. Supp. 980, 995 (D. Ariz. 1992) (Confusion of retailer Walgreen's employees is evidence of confusion among consumers.); *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 451 F. Supp. 555, 562 (S.D.N.Y. 1978) (confusion by retail sales clerk is evidence of confusion of consumers). Defendants point to no evidence undercutting Plaintiff's position, and so this factor also cuts in favor of Plaintiff.

In sum, when considering the *Pizzeria Uno* factors, the evidence construed most favorably to Defendants demonstrates that its use of the STOMP ROCKET mark creates substantial likelihood of confusion as to the origin of the product in the minds of potential consumers. Accordingly, Plaintiffs have satisfied the elements of trademark infringement and false designation of origin under the Lanham Act (15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)), and trademark infringement and unfair competition under Maryland common law. The Court grants summary judgment on these claims.

## 2. Trademark Counterfeiting

Plaintiffs also allege trademark counterfeiting under the Lanham Act, 15 U.S.C.A § 1114. To sustain a counterfeiting claim, Plaintiffs must prove that Defendants (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with

the sale, offering for sale, or distribution of goods, and (4) its use was likely to confuse or deceive. *See Chanel, Inc. v. Banks*, No. WDQ–09–843, 2011 WL 121700, at *5 (D. Md. Jan.13, 2011) (citing *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *see also* 15 U.S.C. §§ 1114(1), 1116(d), 1127. While infringement may well create confusion in the minds of consumers, counterfeiting is the "passing off" of the infringing mark as the registered mark. *See Larsen v. Terk Techs. Corp.*, 151 F.3d 140, 142 (4th Cir. 1998).

The Lanham Act defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from" the plaintiff's mark. 15 U.S.C. § 1127; *see also Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007). Important here, "a mark does not have to be an exact replica of a registered trademark to be deemed a counterfeit," because otherwise counterfeiters could "escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012). However, proof of marks as "substantially indistinguishable" requires a closer degree of similarity than is required for traditional trademark infringement because "counterfeiting is the 'hard core' or 'first degree' of trademark infringement." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (citing 4 McCarthy, § 25:10); *accord GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 471–72 (S.D.N.Y. 2011), *aff'd sub nom. GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 558 F. App'x 116 (2d Cir. 2014) (Substantially indistinguishable "must, at the very least, mean closer than the traditional standard for infringement, 'colorable imitation.'"); *accord Associated Gen. Contractors of Am. v. Stokes*, No. 1:11-CV-795 GBL/TRJ, 2013 WL 1155512, at *4 (E.D. Va. Mar. 19, 2013) (At the summary judgment phase, "whether a mark is counterfeit under the Lanham Act is a higher bar than a mere 'colorable imitation,' and must be more than simply

reminiscent of a registered trademark." (citing *Colgate–Palmolive Co. v. J.M.D. All–Star Import and Export, Inc.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y.2007) (citing 130 Cong. Rec. HI2076, H21078 (daily ed. Oct. 10, 1983) (Joint Statement on 1984 trademark counterfeiting legislation) (explaining that the sponsors did not intend to treat as counterfeiting what would formerly have been arguable, but not clear cut, cases of trademark infringement))). Proof of trademark infringement requires more because slight differences, so long as they are apparent to the typical consumer upon minimal inspection, will defeat the allegation that a mark is counterfeit. *Schneider Saddlery Co. v. Best Shot Pet Prod. Int'l, LLC*, No. 1:06-CV-02602, 2009 WL 864072, at *4 (N.D. Ohio Mar. 31, 2009) (citing *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007) (holding that "Colddate Toothpaste" is not a counterfeit of "Colgate Toothpaste," despite exceedingly similar packaging)). "[I]t cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface or context." *GMA Accessories Inc.*, 765 F.Supp.2d at 471.

Here, viewing the evidence in the light most favorable to the Defendants, a reasonable factfinder could find that the marks, color patterns, and designs on the Stomp Rocket and the Banzai Stomp Rocket, while risking confusion, are not identical or indistinguishable for purposes of proving the counterfeiting claim. *See Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, No. 12 CIV. 5423 LAP, 2015 WL 150756, at *2 (S.D.N.Y. Jan. 12, 2015) (a finding of counterfeiting unsupported because "[e]ven if the mark itself were indistinguishable, the context of the entire watch, which includes a different canteen crown, watch band attachment, and watch face, as well as the Trimix and Swiss Legend names and logos, make clear that Defendants' use of the bezel mark is not 'spurious'" or "[d]eceptively suggesting an erroneous origin; fake.").

The fact finder at trial must also consider the non-counterfeit house mark "Banzai" and any distinguishable features of the Banzai Stomp Rocket in its determination as to whether Defendants' air-missile toy is a counterfeit of the registered STOMP and STOMP ROCKET marks. *See United States v. Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (concluding it was for the jury to decide whether to consider the non-counterfeit mark in its determination that the defendant's plaid print was a counterfeit of a registered Burberry Check mark) (citing *United States v. Yi*, 460 F.3d 623, 629 n.4 (5th Cir. 2006) (holding that it was for the jury to determine whether a battery that used the signature "Duracell" copper top and black body was a counterfeit, even though the text on the counterfeit battery read "Dinacell"));[14] *GMA Accessories, Inc.*, 765 F. Supp. 2d at 472 (finding summary judgement on counterfeiting claim inappropriate where "Charlotte Solnicki" was "simply not identical with or substantially indistinguishable" from "Charlotte."); *Associated Gen. Contractors of Am. v. Stokes*, No. 1:11–CV–795 (GBL), 2013 WL 1155512, at *6 (E.D.Va. Mar, 19, 2013) (fact that mark was accompanied by distinct company name precluded finding of counterfeiting); *see also Stokes*, 2013 WL 1155512, at *4 ("The Fourth Circuit has yet to conclusively establish whether the presence of a non-counterfeit mark near a counterfeit mark has any bearing, as a matter of law, on whether an item as a whole may be considered "counterfeit" under § 1114(1)(a)." (citing *Lam*, 677 F.3d at 199)); *cf. Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148–49 (4th Cir. 1987) (finding summary judgment appropriate where the knitted sport shirt and polo player mark were nearly identical and could not be distinguished by an *unobservable* label inside the back of each shirt bearing the house

---

[14] "While there are slight differences in the civil and criminal definitions of 'counterfeit,' they are 'identical in substance.'" 4 McCarthy, § 25:15 (citing Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12078 (Oct. 10, 1984) ("For technical reasons, the two definitions of 'counterfeit mark' differ slightly in their terms, but they are identical in substance.")).

mark). This Court will therefore deny Plaintiffs' motion for summary judgment on counterfeiting

claim.

### 3. Unfair Trade Practices

The Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Comm. Law §§ 13–

101, *et seq.*, provides "minimum standards for the protection of consumers." *Lloyd v. Gen.*

*Motors Corp.*, 397 Md. 108, 140 (2007). The MCPA prohibits certain unfair and deceptive trade

practices "in [t]he sale . . . of any consumer goods . . . or consumer services" or in "[t]he offer for

sale . . . of consumer goods . . . or consumer services," Md. Code Ann., Comm. Law § 13–303,

and it authorizes private causes of action against violators, *id.* § 13–408(a). Such causes of

action, however, are limited to *consumers* purchasing consumer goods or services. *Boatel Indus.*

*v. Hester*, 77 Md. App. 284, 303 (1988); *see* also *Penn–Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp.

906, 909–11 (D. Md. 1997) (canvassing Maryland cases, observing that three federal courts, in

reliance on those cases, have held that only consumers have standing under the MCPA, and

finally asserting that "there is no competitor standing under the CPA").

The MCPA defines "consumers" as purchasers or recipients of "consumer" goods or

services, "which are primarily for personal, household, family, or agricultural purposes." Md.

Code Ann., Comm. Law II § 13–101(c), (d). Quite simply, Plaintiff JFJ Toys, Inc., a corporate

commercial entity, and Plaintiff Ramirez, the sole owner of JFJ, neither have not alleged facts

nor proffered any evidence that they are "consumers" under the MCPA. Therefore, the MCPA

affords them no protection and no remedy. *See Fare Deals Ltd. v. World Choice Travel.Com,*

*Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001) (holding trademark owner, seeking relief for

misuse of its name, not a consumer under the MCPA); *Boatel Indus.*, 77 Md. App. at 302–04

(holding that plaintiff who purchased boat for commercial purposes had no cause of action under

the Act because he was not a consumer). Accordingly, the Court denies summary judgment and

must dismiss this claim.

### 4.  Defendant's Counterclaim

Defendants' counterclaim of genericness is considered a collateral attack upon the

infringement claim, but is equivalent to an affirmative defense. *Pizzeria Uno*, 747 F.2d at 1529;

*Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.*, 690 F. Supp. 1457, 1461 (D. Md.

1988), *aff'd*, 870 F.2d 654 (4th Cir. 1989); 2 McCarthy, § 34.5. Therefore, the Court's ruling on

the genericness issue with regard to the validity of the registrations of Plaintiffs' marks must

necessarily be a ruling upon defendants' counterclaim. *See Freebies*, 247 F. Supp. 2d at 827;

*Convenient Food Mart, Inc.*, 690 F. Supp. at 1461. Because Defendants have failed to marshal

sufficient evidence to rebut that Plaintiffs' incontestable STOMP and STOMP ROCKET marks

are conclusive evidence of the marks' validity, *Putt Putt*, 936 F. Supp. 2d at 654, Plaintiffs are

entitled to summary judgment on Defendants' counterclaim.

## III.   CONCLUSION

Plaintiffs' motion to exclude the expert report and testimony of Peter Magalhaes is

granted because his opinions were non-substantiated proclamations on the ultimate questions of

law and he lacked the requisite training education or experience in the relevant field of proffered

expertise. As to Plaintiffs' claims of trademark infringement and false designation of origin

under the Lanham Act, the claims of trademark infringement and unfair competition under

Maryland common law, and Defendants' counterclaim of genericness, Plaintiffs are entitled to

summary judgment because no genuine issue of material fact undermines that the mark is

incontestable and Defendants' infringement meets the likelihood of confusion test under *Pizzeria*

*Uno*. The Court denies Plaintiffs' summary judgment motion as to the counterfeiting claim.

Plaintiffs also cannot pursue an unfair trade practices under the MCPA as a matter of law, and

thus this claim must be dismissed. Accordingly, Plaintiffs' motion for partial summary judgment

is granted in part and denied in part. A separate order will follow.


2/21/2017                                                               /S/
Date                                                          Paula Xinis
                                                              United States District Judge